IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| PSI SYSTEMS, INC., D/B/A ENDICIA, § <br> § <br> Plaintiff § <br> § <br> v. § <br> § <br> AUCTANE L.L.C. D/B/A SHIPSTATION, § <br> § <br> Defendant. § <br> § | NO. 1:14-cv-750-LY |

**DECLARATION OF JASON HODGES IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

I, Jason Hodges, do hereby declare as follows:

1.   I am the CTO of Auctane L.L.C. ("Auctane"). I have held this position since February, 2013. In addition, as part of my job functions in this position I provide certain IT support services to Rapid Enterprises, LLC d/b/a Express 1 ("Express 1") pursuant to a contract between Auctane and Express 1. Furthermore, I was a founder of Auctane and have been with the company in that capacity since the inception of the company in 2010. I have first-hand, personal knowledge of the facts stated herein and, if called to testify, could and would competently testify to those facts.

2.   I have reviewed the Application for Temporary Restraining Order and Preliminary Injunction ("Application") filed by PSI Systems, Inc., d/b/a Endicia ("Endicia"), and the supporting papers filed with it. The papers filed by Endicia contain a number of serious inaccuracies and omissions, which I will attempt to address in this declaration.

3.   Auctane provides a shipping solution that enables businesses to automate various aspects of their order fulfillment process, under the name "ShipStation." ShipStation is a

"software as a service" solution; Auctane's customers log in to their ShipStation account in order to use the service. Auctane's customers pay a monthly fee to Auctane for this service, and in addition pay the costs charged by the particular shipping providers that they use to ship their goods.

    4.    In a very simplified explanation, the ShipStation solution provides Auctane's customers the ability to select among several different providers of shipping labels, which are then used to ship goods. These providers include (i) providers of online USPS postage, i.e., Stamps.com Inc. ("Stamps.com") and Endicia, (ii) USPS postage resellers such as Express 1, which typically offer postage at discounted rates, and (iii) private shipping providers such as Federal Express, UPS and DHL. The Auctane customer selects the particular shipping label provider (this may be done manually or through rules created by the customer), enters information concerning the shipment (such as weight and destination address) and the appropriate shipping label is then printed at the customer's printer.

    5.    Online postage providers such as Stamps.com and Endicia store and dispense postage from highly secure "virtual postage meters" that are dedicated to particular Stamps.com and Endicia customers. When a ShipStation user selects an online postage provider such as Stamps.com or Endicia as the shipping label provider, the ShipStation system uses an Application Programming Interface ("API") to call the appropriate provider (Stamps.com or Endicia, as the case may be) and make a request for a postage label in the appropriate amount. The API used to call Stamps.com is referred to as the Stamps.com API, and the API used to call Endicia is referred to as the Endicia API. The provider will then deduct the requested amount of postage from that customer's account, generate data defining the label and transmit it back to the ShipStation system, which will then forward the label data to the Auctane customer to be printed

on the customer's printer.

6. Postage resellers such as Express 1 do not actually directly store and dispense postage; rather, they obtain postage value from providers such as Stamps.com and Endicia in bulk amounts and then offer the postage at discounted rates. The Express 1 system includes two APIs, one of which calls Stamps.com for postage and the other of which calls Endicia for postage. These APIs are called the Express 1 Stamps.com API and Express 1 Endicia API, respectively. Thus, when a ShipStation user selects a postage reseller such as Express 1, the ShipStation system directs the Express 1 Stamps.com API to request a Stamps.com label or the Express 1 Endicia API to request an Endicia label. The process flow then proceeds much as outlined above in paragraph 5, with the exceptions that it is Express 1 and not the ShipStation user that holds the account at Stamps.com or Endicia that is debited. A diagram outlining a portion of this process flow is attached hereto as Exhibit 1.

7. The programming that determines whether a ShipStation user's request for postage from Express 1 will be fulfilled on the back end by Stamps.com or by Endicia resides on the ShipStation system. Data identifying the back-end postage provider for each customer resides in a field in Express 1's customer database, and these customer records are updated to reflect a new back-end provider when the API indicates that a new provider is being used. However, the logic determining which back-end provider will be used resides on the ShipStation system, not on Express 1's system.

8. Prior to the acquisition of Auctane by Stamps.com, the ShipStation system routed customer requests for postage from Express 1 to either Stamps.com or Endicia based on whether that particular customer had an account with either of those providers. If a customer requesting postage through Express 1 had an account with Stamps.com, the Stamps.com API would be used

to fulfill the request.  If the customer requesting postage through Express 1 had an account with Endicia, the Endicia API would be used to fulfill the request.  If the customer did not have an account with either provider, the Endicia API would typically be used to fulfill the request.  To the best of my knowledge this was done not pursuant to any obligation to Endicia, but rather as a matter of courtesy.

9. On or about June 16, 2014, Stamps.com acquired Auctane.  Auctane continues to operate as an independent, wholly-owned subsidiary of Stamps.com, led by the company's pre-existing management team.

10. On around July 21 or 22, and on the evening of July 23, with the full knowledge and approval of Express 1, I implemented a change to the programming resident in the ShipStation system that caused requests by a subset of ShipStation users for postage from Express 1 to be fulfilled on the back end by Stamps.com rather than Endicia.

11. The modifications to the programming for routing postage requests to Stamps.com were limited in scope.  First, I did not modify the programming for fulfillment of postage requests from ShipStation users who request postage from Endicia; those requests continue to be fulfilled by Endicia, not by Stamps.com.  Second, with respect to ShipStation users requesting postage through Express 1, I did not modify the programming for any users who were referred by Endicia.  I modified the back-end postage fulfillment programming only for those ShipStation users who became customers of Auctane through no participation of Endicia.

12. In implementing this programming change, I did not use any "insider access" to Express 1 software.  The programming change that directed the ShipStation system to re-rout back-end fulfillment of Express 1 postage requests was made entirely and solely on the ShipStation system, not on any Express 1 software or hardware.  The only change to the Express

1 system that I made that related in any way to the re-routing of postage fulfillment was to update the API at Express 1 to enable ShipStation users to change the back-end routing. I specifically discussed the need to update the API with Colby Clark – Clark asked me whether customers would need to close their accounts in order to be re-routed to Stamps.com, and I told him that they would not if I updated the API at Express 1. He told me to go ahead and update the API. I performed this task in around early to mid-July.

13. In implementing this programming change, I did not use any confidential information or trade secrets of Endicia. The customer information stored on the ShipStation system is provided to Auctane by Auctane's customers, not by Endicia. I am not aware of any confidential Endicia information, or ShipStation user information that is confidential to Endicia, that is stored on the ShipStation system. To the best of my knowledge, I have not used nor do I or Auctane possess any confidential information or trade secrets of Endicia.

14. In implementing this programming change, I did not solicit any Endicia customers. The ShipStation users who were affected by the programming change that I implemented on the ShipStation system are already Auctane customers, and Auctane does not attempt to provide online postage. In addition, I did not use any information obtained as a result of the agreement with Endicia in connection with implementing the programming change that re-routed the back-end postage fulfillment for ShipStation users requesting postage through Express 1, or for any other purpose; I just programmed the code. I am not aware of anyone at Auctane soliciting Endicia customers.

15. I have reviewed the Affidavit of J. Colby Clark attached to Endicia's Application, in which Clark states that Express 1's customers were "reclassified" from Endicia to Stamps.com without his knowledge or authority, that this "reclassification" happened without his knowledge,

direction or participation, that I "reclassified" these customers without know consent or approval, and so on.  <u>This is flatly false</u>.

16.     Beginning in mid-June 2014, I and Nathan Jones, the CEO of Auctane, engaged in a series of discussions with Colby Clark and others at Express 1 focused on whether Express 1 could increase the revenue share provided to Auctane under the agreements between Auctane and Express 1.  In a conversation that I had with Clark on June 18, 2014, <u>Clark suggested to me</u> that Express 1 could increase the revenue share if shipping label requests from ShipStation customers selecting Express 1 were to be routed to Stamps.com for fulfillment instead of Endicia, because Express 1 paid no royalty to Stamps.com whereas it did pay a royalty to Endicia.  A true and correct copy of an email from me to Nathan Jones recounting a portion of this conversation is attached hereto as Exhibit 2.

17.     Subsequently, I had several discussions and exchanged several emails with Clark and others at Express 1 concerning the logistics associated with switching the back-end fulfillment of postage requests to Express 1 from Endicia to Stamps.com.  For example, on June 24, 2014, Clark sent me an email in which he states, in relevant part, that "I will do a [redacted] increase (because that is what I am paying Endicia) on all shipments from Stamps."  This reflects the fact that Clark was offering to increase the revenue share to Auctane on postage requests fulfilled from Stamps.com, and that he knew that ShipStation customers requesting postage through Express 1 would be supplied from Stamps.com instead of Endicia going forward.  A true and correct copy of this email is attached hereto as Exhibit 3.

18.     It was necessary to increase the number of "virtual meters" at Stamps.com dedicated to Express 1 in order to meet the expected increased volume of postage supplied by Stamps.com to ShipStation users requesting postage through Express 1.  This is reflected in some

of the email traffic between me and Clark.  For example, on June 25, Clark sent me an email asking me for input on "how to incorporate our Stamps meter existing into the 'system' and per our potential arrangement moving forward."  Here, Clark was asking me for input in how to handle the additional transaction load expected to be processed through Stamps.com if the postage requests were routed to Stamps.com instead of Endicia.  A true and correct copy of this email is attached hereto as Exhibit 4.

19. Another issue that needed to be addressed at Express 1 was how to handle rebate requests from ShipStation customers requesting postage through Express 1 after the changeover was made to Stamps.com.  On July 7, 2014, Jim Bowers, the CFO of Express 1, sent me an email stating "Jason since you are changing Ship Station from Endica [sic] to Stamps," it was imperative to integrate processes for accommodating rebates and postage denials from Stamps.com into Express 1's infrastructure.  This clearly reflects Bowers's understanding that postage requests from ShipStation users would be supplied from Stamps.com and not Endicia going forward.  A true and correct copy of this email is attached hereto as Exhibit 5.

20. A true and correct copy of another series of emails concerning the need for more Express 1 meters at Stamps.com, running from June 18 to July 21, 2014, is attached hereto as Exhibit 6.  It reflects the fact that 20 additional meters were funded for Express 1 at Stamps.com, which reflects the substantial increase in traffic that was expected after the postage requests were re-routed to Stamps.com.  In addition, the thread includes an email from July 18 in which I informed Bowers that once some logistical issues were addressed I intended to "move some customers from Endicia to Stamps."  Bowers, of course, never questioned the changeover or indicated that it was not authorized.

21. If in fact the re-routing of the back-end postage fulfillment function for Express 1

19900238                                             -7-

from Endicia to Stamps.com had been unauthorized, I would have expected to receive telephone calls and emails from Clark, Bowers and others at Express 1 shortly after the re-programming was completed questioning the change and demanding an explanation.  Nothing of the sort occurred.  I received no such calls or emails from anyone at Express 1.  In fact, what few communications I had with people at Express 1 concerning the change concerned how to respond to questions from customers who were used to receiving Endicia-branded labels. A true and correct copy of an email from Scott Bryce, the Vice President of Operations at Express 1, to me along these lines is attached hereto as Exhibit 7.  There was no shock, alarm or confusion reflected in this email, but rather merely an indication that customer support calls were "starting to roll in."

     I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

     Dated:  August 13, 2014

Jason Hodges