## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| PSI SYSTEMS, INC., D/B/A ENDICIA | § | |
|     Plaintiff, | § | |
| | § | |
|     v. | § | Civil Action No: 1:14-cv-750 |
| | § | |
| AUCTANE L.L.C. D/B/A SHIPSTATION | § | |
| | § | |
|     Defendant. | § | |

### DEFENDANT'S AMENDED ANSWER TO PLAINTIFF'S
### FIRST AMENDED COMPLAINT AND COUNTERCLAIM

Defendant Auctane L.L.C., d/b/a ShipStation, ("ShipStation") files this Amended Answer and Counterclaim to the First Amended Complaint filed by Plaintiff PSI Systems, Inc., d/b/a Endicia, ("Endicia") in this Court on September 22, 2014.

### I. PARTIES

1.    On information and belief, Endicia is a California corporation with its principal office located at 385 Sherman Avenue, Palo Alto, California 94306. ShipStation lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 1 of the First Amended Complaint.

2.    ShipStation admits the allegations contained in paragraph 2 of the First Amended Complaint.

### II. JURISDICTION

3.    ShipStation admits the allegations contained in paragraph 3 of the First Amended Complaint.

4.     ShipStation admits the allegations contained in paragraph 4 of the First Amended Complaint.

### III. VENUE

5.     ShipStation admits the allegations contained in paragraph 5 of the First Amended Complaint.

6.     ShipStation admits the allegations contained in paragraph 6 of the First Amended Complaint.

### IV. FACTUAL BACKGROUND

7.     ShipStation admits the allegations contained in paragraph 7 of the First Amended Complaint.

8.     ShipStation admits that Endicia licenses other software companies to integrate its Endicia Label Server ("ELS") software into the applications those companies provide so that their customers can print USPS Shipping Labels using a personal computer.  Except as expressly admitted, ShipStation denies the remaining allegations of paragraph 8 of the First Amended Complaint.

9.     ShipStation admits the allegations contained in paragraph 9 of the First Amended Complaint.

10.     ShipStation admits that Endicia and ShipStation have done business with each other since at least July 2011.  ShipStation admits that an Agreement ("2011 Endicia-ShipStation Agreement") between Endicia and ShipStation was fully executed on August 1, 2011 and that the 2011 Endicia-ShipStation Agreement allowed ShipStation to embed the ELS service in the applications it provides its customers in order to allow customers to print their own shipping labels with appropriate postage, granted a license to the ELS service from Endicia to ShipStation,

and provided other services from Endicia to ShipStation.  Except as expressly admitted, ShipStation denies the remaining allegations of paragraph 10 of the First Amended Complaint.

11.     ShipStation admits that an Agreement ("2013 Endicia-ShipStation Agreement") between Endicia and ShipStation was fully executed on November 22, 2013, replacing the 2011 Endicia-ShipStation Agreement.  ShipStation admits that Exhibit A purports to be a true and copy of the 2013 Endicia-ShipStation Agreement and subsequent amendments thereto. ShipStation admits that the 2013 Endicia-ShipStation Agreement allowed ShipStation to embed the ELS service in the applications it provides its customers in order to allow customers to print their own shipping labels with appropriate postage, granted a license to the ELS service from Endicia to ShipStation, and provided other services from Endicia to ShipStation.  Except as expressly admitted, ShipStation denies the remaining allegations of paragraph 11 of the First Amended Complaint.

12.     Upon information and belief, ShipStation admits the allegations contained in paragraph 12 of the First Amended Complaint.

13.     ShipStation admits that the business interaction among Express One, Endicia, and ShipStation has operated at certain times in the past as follows:  Customers use ShipStation to import and manage their orders for products they sell through various sources (eBay, Amazon, etc.), to print shipping labels for various shipping providers (UPS, FedEx, USPS, etc.), and to ensure they have information about the cost of shipping and delivery status of their packages. ShipStation admits that ShipStation customers may obtain discounted pricing on certain types of USPS shipping from Express One.  Except as expressly admitted, ShipStation denies the remaining allegations of paragraph 13 of the First Amended Complaint.

14.     ShipStation admits that Endicia referred some customers to use ShipStation's platform.  ShipStation admits that the referral program was made part of the payment terms

under the 2013 Endicia-ShipStation Agreement.  Except as expressly admitted, ShipStation denies the remaining allegations of paragraph 14 of the First Amended Complaint.

15.     ShipStation denies the allegations of paragraph 15 of the First Amended Complaint.

16.     ShipStation admits that Endicia provided ShipStation with a license to use Endicia's ELS service.  Except as expressly admitted, ShipStation denies the remaining allegations of paragraph 16 of the First Amended Complaint.

17.     ShipStation admits that under the 2013 Endicia-ShipStation Agreement, beginning November 2013 going forward, ShipStation agreed to not use any information obtained as a result of the 2013 Endicia-ShipStation Agreement to solicit customers of Endicia with respect to services or products substantially similar to those provided to such customer by Endicia.  Except as expressly admitted, ShipStation denies the remaining allegations of paragraph 17 of the First Amended Complaint.

18.     ShipStation admits that under the 2013 Endicia-ShipStation Agreement, ShipStation agreed to not use any information obtained as a result of the 2013 Endicia-ShipStation Agreement to solicit customers of Endicia with respect to services or products substantially similar to those provided to such customer by Endicia.  ShipStation admits that under the terms of the 2013 Endicia-ShipStation Agreement, Confidential Information, as defined by the 2013 Endicia-ShipStation Agreement, will continue to be protected for a period of three years following the termination of the 2013 Endicia-ShipStation Agreement.  Except as expressly admitted, ShipStation denies the remaining allegations of paragraph 18 of the First Amended Complaint.

19.     ShipStation admits the allegations contained in paragraph 19 of the First Amended Complaint.

20.     ShipStation admits that on June 16, 2014, Stamps.com announced the acquisition of ShipStation for up-front consideration of $50 million in cash plus performance-linked earn-out consideration of up to 768,900 shares of Stamps.com common stock.  At the close of the acquisition, ShipStation was a fully-owned subsidiary of Stamps.com effective June 10, 2014. Except as expressly admitted, ShipStation denies the remaining allegations of paragraph 20 of the First Amended Complaint.

21.     ShipStation denies the allegations of paragraph 21 of the First Amended Complaint.

22.     ShipStation denies the allegations of paragraph 22 of the First Amended Complaint.

23.     ShipStation denies the allegations of paragraph 23 of the First Amended Complaint.

24.     ShipStation denies the allegations of paragraph 24 of the First Amended Complaint.

## V. CAUSES OF ACTION

**A.**     COUNT ONE: BREACH OF CONTRACT – NON-SOLICITATION

25.     ShipStation restates and incorporates by reference the preceding paragraphs 1-24 inclusive, as if fully set forth herein.

26.     ShipStation admits that the 2013 Endicia-ShipStation Agreement was fully executed on November 22, 2013.  ShipStation considers the 2013 Endicia-ShipStation Agreement terminated as a result of Endicia's breach.  Except as expressly admitted, ShipStation denies the remaining allegations of paragraph 26 of the First Amended Complaint.

27.     ShipStation admits the allegations contained in paragraph 27 of the First Amended Complaint.

28.     ShipStation denies the allegations of paragraph 28 of the First Amended Complaint.

29.     ShipStation denies the allegations of paragraph 29 of the First Amended Complaint.

30.     ShipStation denies the allegations of paragraph 30 of the First Amended Complaint.

31.     ShipStation denies the allegations of paragraph 31 of the First Amended Complaint.

32.     ShipStation denies the allegations of paragraph 32 of the First Amended Complaint.

**B.**     COUNT TWO: BREACH OF CONTRACT – MISAPPROPRIATION CONFIDENTIAL INFORMATION AND TRADE SECRETS

33.     ShipStation restates and incorporates by reference the preceding paragraphs 1-32 inclusive, as if fully set forth herein.

34.     ShipStation admits that the 2013 Endicia-ShipStation Agreement was fully executed on November 22, 2013.  ShipStation considers the 2013 Endicia-ShipStation Agreement terminated as a result of Endicia's breach.  Except as expressly admitted, ShipStation denies the remaining allegations of paragraph 34 of the First Amended Complaint.

35.     ShipStation admits the allegations contained in paragraph 35 of the First Amended Complaint.

36.     ShipStation denies the allegations of paragraph 36 of the First Amended Complaint.

37.     ShipStation denies the allegations of paragraph 37 of the First Amended Complaint.

38.     ShipStation denies the allegations of paragraph 38 of the First Amended Complaint.

39.     ShipStation denies the allegations of paragraph 39 of the First Amended Complaint.

**C.**     **COUNT THREE: BREACH OF CONTRACT – PAYMENT OF ROYALTIES**

40.     ShipStation restates and incorporates by reference the preceding paragraphs 1-39 inclusive, as if fully set forth herein.

41.     ShipStation admits that the 2013 Endicia-ShipStation Agreement was fully executed on November 22, 2013.  ShipStation considers the 2013 Endicia-ShipStation Agreement terminated as a result of Endicia's breach.  Except as expressly admitted, ShipStation denies the remaining allegations of paragraph 41 of the First Amended Complaint.

42.     ShipStation denies the allegations of paragraph 42 of the First Amended Complaint.

43.     ShipStation denies the allegations of paragraph 43 of the First Amended Complaint.

44.     ShipStation denies the allegations of paragraph 44 of the First Amended Complaint.

45.      ShipStation denies the allegations of paragraph 45 of the First Amended Complaint.

**D.      COUNT FOUR: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

46.      ShipStation restates and incorporates by reference the preceding paragraphs 1-45 inclusive, as if fully set forth herein.

47.      ShipStation admits that the 2013 Endicia-ShipStation Agreement was fully executed on November 22, 2013.  ShipStation considers the 2013 Endicia-ShipStation Agreement terminated as a result of Endicia's breach.  Except as expressly admitted, ShipStation denies the remaining allegations of paragraph 47 of the First Amended Complaint.

48.      ShipStation denies the allegations contained in paragraph 48 of the First Amended Complaint.

49.      ShipStation denies the allegations of paragraph 49 of the First Amended Complaint.

50.      ShipStation denies the allegations of paragraph 50 of the First Amended Complaint.

51.      ShipStation denies the allegations of paragraph 51 of the First Amended Complaint.

**E.      COUNT FIVE: MISAPPROPRIATION OF TRADE SECRETS**

52.      ShipStation restates and incorporates by reference the preceding paragraphs 1-51 inclusive, as if fully set forth herein.

53.     ShipStation denies the allegations of paragraph 53 of the First Amended Complaint.

54.     ShipStation denies the allegations of paragraph 54 of the First Amended Complaint.

55.     ShipStation denies the allegations of paragraph 55 of the First Amended Complaint.

**F.     COUNT SIX: DECLARATORY JUDGMENT**

56.     ShipStation restates and incorporates by reference the preceding paragraphs 1-55 inclusive, as if fully set forth herein.

57.     Paragraph 57 of the First Amended Complaint sets forth the relief that Endicia seeks in its declaratory judgment cause of action.  To the extent that paragraph 57 in the First Amended Complaint makes allegations against ShipStation, ShipStation denies such allegations. ShipStation denies that Endicia is entitled to any declaratory relief.

**VI. CONDITIONS PRECEDENT**

58.     ShipStation denies the allegations of paragraph 58 of the First Amended Complaint.

**VII. APPLICATIONS FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

59.     ShipStation restates and incorporates by reference the preceding paragraphs 1-58 inclusive, as if fully set forth herein.

60.     The second paragraph numbered 47 in the First Amended Complaint states Endicia's requests to the Court for a temporary restraining order and a preliminary injunction. To the extent that the second paragraph numbered 47 in the First Amended Complaint makes

allegations against ShipStation, ShipStation denies such allegations.  ShipStation denies that Endicia is entitled to any temporary or preliminary injunctive relief.

## VIII. REQUEST FOR PERMANENT INJUNCTION

61.    The second paragraph numbered 48 in the First Amended Complaint states Endicia's requests to the Court for a permanent injunction.  To the extent the second paragraph numbered 48 in the First Amended Complaint makes allegations against ShipStation, ShipStation denies such allegations.  ShipStation denies that Endicia is entitled to a permanent injunction.

## IX. ATTORNEYS' FEES

62.    ShipStation denies the allegations of the second paragraph numbered 49 in the First Amended Complaint for lack of knowledge or information sufficient to form a belief as to the truth of those allegations.

63.    ShipStation denies the allegations of the second paragraph numbered 50 in the First Amended Complaint.

## X. ANSWER TO PRAYER

ShipStation denies any and all allegations contained in the remainder of the First Amended Complaint and denies that Endicia is entitled to any of the relief requested in paragraphs (1) through (5) of its prayer for relief or to any other relief in any form whatsoever. ShipStation further denies each and every allegation contained in the First Amended Complaint to which it has not specifically responded.

## AFFIRMATIVE DEFENSES

Without waiving the foregoing answer, ShipStation asserts the following separate affirmative defenses.

**First Affirmative Defense**
(Unclean Hands)

Endicia's First Amended Complaint, and each cause of action asserted therein, is barred in whole or in part by the doctrine of unclean hands.  Specifically, and at a minimum, Endicia violated the 2013 Endicia-ShipStation Agreement by using information obtained as a result of 2013 Endicia-ShipStation Agreement to solicit customers of ShipStation with respect to services or products substantially similar to those provided to such customers of ShipStation by ShipStation.  Endicia has also violated the 2013 Endicia-ShipStation Agreement by disclosing ShipStation's Confidential Information, including confidential emails and the terms of the Agreement, through its public filings, including the Original Complaint and its filings requesting a TRO and Preliminary Injunction.

**Second Affirmative Defense**
(Prior Breach by Endicia)

Endicia's First Amended Complaint, and each cause of action asserted therein, is barred in whole or in part because of Endicia's prior breach of the 2013 Endicia-ShipStation Agreement.  Specifically, and at a minimum, Endicia violated the 2013 Endicia-ShipStation Agreement by using information obtained as a result of 2013 Endicia-ShipStation Agreement to solicit customers of ShipStation with respect to services or products substantially similar to those provided to such customers of ShipStation by ShipStation.  Endicia has also violated the 2013 Endicia-ShipStation Agreement by disclosing ShipStation's Confidential Information, including confidential emails and the terms of the Agreement, through its public filings, including the Original Complaint and its filings requesting a TRO and Preliminary Injunction.  Endicia's contract claims should be barred because before a plaintiff can recover in contract, it must

demonstrate substantial compliance with all of the provisions of that contract.  Endicia has not

substantially complied and/or performed on its contractual obligations.

### Third Affirmative Defense
(Good Faith)

Endicia's First Amended Complaint, and each cause of action asserted therein, is barred

in whole or in part because ShipStation's actions were justified and lawful based upon

reasonable grounds, belief, and good faith conduct.

### Fourth Affirmative Defense
(Failure to Mitigate)

Endicia's First Amended Complaint, and each cause of action asserted therein, is barred

by Endicia's failure to take reasonable efforts to mitigate damages or injury, if any, that would

have prevented (or at a minimum, substantially reduced) Endicia's alleged injury or damage.

Any recovery by Endicia must be reduced or barred for this reason.

### Fifth Affirmative Defense
(Ready Ascertainability)

Endicia is barred from claiming trade secrets in any items of information that were

readily ascertainable within the meaning of that affirmative defense under applicable trade secret

law.

### Sixth Affirmative Defense
(Limitation of Liability)

Endicia is barred from receiving any relief on the First Amended Complaint, and on any

cause of action alleged therein, to the extent that any of its claims for damages, if any, are barred

by limitation of liability terms in the 2013 Endicia-ShipStation Agreement.

**Seventh Affirmative Defense**
(Vague and Ambiguous Contract)

Endicia's First Amended Complaint, and each cause of action asserted therein, is barred in whole or in part because the material term "Customers of Endicia" as used in Section 7.7 of the 2013 Endicia-ShipStation Agreement is vague and ambiguous because "Customers of Endicia" is susceptible to multiple different, reasonable interpretations.  As such, the indefinite term "Customers of Endicia" and Section 7.7 of the 2013 Endicia-ShipStation Agreement fails to provide a reasonable standard for determining whether a breach has occurred.  Therefore Section 7.7 of the 2013 Endicia-ShipStation Agreement is invalid and unenforceable.

**Additional Affirmative Defenses**
(Reservation of Right to Assert Additional Defenses)

ShipStation may have additional, as yet unidentified, defenses available.  ShipStation reserves the right to assert additional defenses that are revealed by its investigation of this action or through discovery.

## COUNTERCLAIMS

In addition to the facts alleged herein, ShipStation incorporates by reference the responses to the First Amended Complaint listed above.

### The Parties

1.      ShipStation is a Texas limited liability company with its principal office located at 2815 Exposition Blvd., Austin, Texas 78703.

2.      On information and belief, Endicia is a California corporation with its principal office located at 385 Sherman Avenue, Palo Alto, California 94306.

### Jurisdiction

3.      Diversity jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because Endicia and ShipStation are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

4.      This Court has personal jurisdiction over ShipStation because ShipStation is a citizen of the State of Texas and conducts systematic and continuous business in the State of Texas.  This Court has personal jurisdiction over Endicia at least because Endicia has already availed itself of this Court in this case.

5.      Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this counterclaim occurred in the Western District of Texas.

### Background

6.      The ShipStation software was launched in September 2011.  The ShipStation software is a web-based software solution designed to help online retailers organize, fulfill and ship their orders quickly and easily.

7.      On information and belief, Endicia is in the businesses of:  (1) shipping and mail software automation, and (2) postage evidencing supporting the entire line of United States Postal Service ("USPS") products allowing USPS customers to produce the entire spectrum of USPS shipping labels complete with tracking, postage, and insurance.

8.      Endicia and ShipStation have done business with each other since at least July 2011.

9.      On or about August 1, 2011, Endicia and ShipStation entered into an agreement ("2011 Endicia-ShipStation Agreement") that allowed ShipStation to embed the ELS service in the applications it provides its customers in order to allow customers to print their own shipping labels with appropriate postage, and granted a license to the ELS service from Endicia to ShipStation.

10.     In or about April 2013, Endicia used ShipStation's trade secret shipping volume information to target potential customers for its shipping integration with eBay.  Endicia obtained this information as a result of the 2011 Endicia-ShipStation Agreement.  Endicia's use of ShipStation's trade secret shipping volume information was unauthorized.

11.     On or about November 22, 2013, Endicia and ShipStation entered into an agreement ("2013 Endicia-ShipStation Agreement").  As defined in both the 2011 and 2013 Endicia-ShipStation Agreements, a "Customer" has the meaning set forth in Paragraph A of Recitals: Endicia has various agreements with the USPS pursuant to which Endicia is an approved postage provider.  One such agreement (the "USPS Agreement") allows Endicia to license other software providers to embed the Endicia Label Server service described in more

detail in Exhibit A attached hereto ("ELS") in the application(s) they provide their customers ("Customers") in order to allow Customers "to print their own shipping labels with appropriate postage."

12.    The 2013 Endicia-ShipStation Agreement includes a definition of Confidential Information.  The definition of Confidential Information includes *inter alia* "all information or data (in written, electronic or other form, or oral information that is reduced to writing) ... pertaining to the terms and conditions of [the 2013 Endicia-Auctane] Agreement."

13.    The 2013 Endicia-ShipStation Agreement includes the following termination provision:

**5.2 Termination**. Either Party may terminate this Agreement without cause by providing sixty (60) days written notice to other Party prior to and effective as of the applicable renewal date. Either party may terminate this Agreement if the other party materially breaches any provision of this Agreement and does not cure such breach within thirty (30) days of receiving written Notice from the terminating party.

14.    The 2013 Endicia-ShipStation Agreement includes a "Duties Related to Confidential Information and Trade Secrets" provision ("Section 7.1").  The "Duties Related to Confidential Information and Trade Secrets" provision requires, *inter alia*, that "[e]ach Party... will not directly or indirectly disclose or use the other Party's Confidential Information or Trade Secrets."

15.    The 2013 Endicia-ShipStation Agreement includes the following remedies provision:

**7.3 Remedies.** Each Party acknowledges that the other Party may suffer irreparable damage in the event of any breach of the provisions of this Article 7.  Accordingly, in such

event, a Party will be entitled to temporary, preliminary and final injunctive relief, as well as any other applicable remedies at law or in equity against the Party who has breached or threatened to breach this Article 7.

16.     The 2013 Endicia-ShipStation Agreement includes the following non-solicitation provision:

**7.7 Non-Solicitation of Customers.** Endicia will not use any information obtained as a result of this Agreement to solicit Customers of Partner with respect to services or Products substantially similar to those provided to such Customer by Partner. Partner will not use any information obtained as a result of this Agreement to solicit Customers of Endicia with respect to services or Products substantially similar to those provided to such Customer by Endicia.

17.     The 2013 Endicia-ShipStation Agreement includes the following choice-of-law provision:

**10.9 Governing Law and Forum.** This Agreement shall be governed by the laws of the State of Delaware, excluding its conflict of laws rules.

18.     On information and belief, Advanced Distribution Solutions, Inc ("ADSI") is a developer and/or provider of multi-carrier shipping software.

19.     On information and belief, ShipWorks is a developer and/or provider of multi-carrier shipping software.

20.     On information and belief, Solid Commerce is a developer and/or provider of multi-carrier shipping software.

21.     On information and belief, ShippingEasy is a developer and/or provider of multi-carrier shipping software.

22.     ADSI, ShipWorks, Solid Commerce, and ShippingEasy offer services or products substantially similar to those provided by ShipStation to its customers and are competitors of ShipStation's.

23.     Endicia has its own shipping software integration with at least Amazon and eBay.

24.     ShipStation begins its relationship with most of its customers in the following way:  a potential customer sees a ShipStation advertisement on an online marketplace (*e.g.,* eBay, Amazon, Etsy) or on a search engine website (*e.g.*, Google), the potential customer clicks on a link in the advertisement causing the potential customer's browser to navigate to ShipStation's website, and the potential customer elects to sign up for a ShipStation account.  As part of the ShipStation account sign-up process, the customer provides his or her name, company name (if any), and contact information including an email address.

25.     Once a ShipStation customer has signed up for a ShipStation account, he or she can sign-up for accounts with a PC Postage Provider or other providers (*e.g.*, FedEx, UPS).  The ShipStation website accepts user input and relays the input to the provider's server via an application programming interface ("API").  Prior to June 2014, a new ShipStation customer could sign up for an Endicia account via an API on the ShipStation website.  When a new ShipStation customer elected to open an Endicia account, the ShipStation website would relay the information provided by the customer to an Endicia server.  Such information included the new ShipStation customer's name and email address.  In this way, many new ShipStation customers signed up for accounts with Endicia.

26.     Such new ShipStation customers with Endicia accounts were able to purchase and did purchase postage using Endicia's ELS service, and were therefore covered by the 2013 Endicia-ShipStation Agreement.

27.     In July 2014, Endicia sent an email newsletter ("July 2014 newsletter") to customers on its customer list, some of which it knew to be customers of ShipStation.  This email newsletter featured advertisements for "Featured Partners" ADSI, ShipWorks, and Solid Commerce who offer services or products that are substantially similar to those offered by ShipStation.  The July 2014 newsletter also featured advertisements of Endicia's own shipping software integration with Amazon.

28.     Endicia distributed the July 2014 newsletter via email to customers whose email addresses were on Endicia's email newsletter distribution list.  Endicia distributed the July 2014 newsletter to "Customers of Partner" as set forth in Section 7.7 of the 2013 Endicia-ShipStation Agreement.

29.     Many of the email addresses on Endicia's email newsletter distribution list, including "Customers of Partner" as set forth in Section 7.7 of the 2013 Endicia-ShipStation Agreement, were provided to Endicia via the ShipStation subscriber sign-up process discussed above.

30.     Endicia knew that some of the customers who received the July 2014 newsletter are "Customers of Partner" as set forth in Section 7.7 of the 2013 Endicia-ShipStation Agreement.

31.     On January 5, 2014, Endicia posted a tweet to its Twitter account featuring ShippingEasy as its "partner of the month."  The tweet contained a link to ShippingEasy's Twitter account as well as a link to a profile of ShippingEasy on Endicia's website.  ShippingEasy offers services or products that are substantially similar to those offered by ShipStation.

32.     Endicia knew that some of the customers who received this tweet are customers of ShipStation under the 2013 Endicia-ShipStation Agreement.

33.     On information and belief, Endicia has repeatedly sent out other similar newsletters and/or tweets to solicit customers of ShipStation with respect to services or products substantially similar to those provided to such customers by ShipStation, including but not limited to promotions and solicitations regarding (a) Endicia's own software and shipping solutions integrated into marketplaces such as BigCommerce, eBay and others, and (b) shipping software and solutions offered by competitors of ShipStation.

34.     Endicia has used information obtained as a result of the 2013 Endicia-ShipStation Agreement to solicit customers of ShipStation with respect to services or products substantially similar to those provided to such customers by ShipStation.

35.     On August 11, 2014, Endicia filed the original Complaint in this case with this Court.  On August 12, 2014, Endicia filed an Application for Temporary Restraining Order and Preliminary Injunction (the "TRO") in this case with this Court.  Endicia attached an unredacted copy of the 2013 Endicia-ShipStation Agreement as an exhibit to both the Complaint and the TRO.

36.     Neither the original Complaint nor the TRO were filed under seal.

37.     The original Complaint and the TRO were and continue to be publicly available.

38.     Endicia has directly and/or indirectly disclosed the terms and conditions of the 2013 Endicia-ShipStation Agreement.

39.     Endicia has directly and/or indirectly disclosed Confidential Information of ShipStation including, but not limited to, the cost structure between the parties, the amount of the referral fees, revenue-sharing amounts for DHL GlobalMail transactions, rebates and revenue share amounts on USPS qualified products, the term of the Agreement, and indemnification obligations.

40.     Endicia directly and/or indirectly disclosed in unredacted form information about the Express One portal.  This information is Confidential Information of ShipStation and includes information about ShipStation customers and transaction volume of ShipStation.

41.     Endicia did not receive ShipStation's consent to disclose the 2013 Endicia-ShipStation Agreement.

42.     Endicia did not receive ShipStation's consent to disclose any Confidential Information of ShipStation.

43.     ShipStation notified Endicia of its breach of Section 7.1 of the 2013 Endicia-ShipStation Agreement via a letter signed by Nathan Jones dated August 19, 2014.

44.     Endicia responded to the letter dated August 19, 2014 in a letter signed by Amine Khechfe dated August 25, 2014.  In this letter, Endicia asserted that its disclosure of the terms of the 2013 Endicia-ShipStation Agreement and other Confidential Information of ShipStation in a publicly available filing to this Court did not constitute a breach of the confidentiality provisions of the 2013 Endicia-ShipStation Agreement.  Endicia also asserted that its *post hoc* filing of a motion to seal the 2013 Endicia-ShipStation Agreement and other Confidential Information of ShipStation cured any breach.

45.     On September 4, 2014, counsel for ShipStation deposed Rick Hernandez as part of discovery in this case.  Rick Hernandez is Endicia's Senior Manager of Business Development.

46.     Rick Hernandez admitted that Endicia distributed the July 2014 newsletter and similar newsletters to customers of ShipStation.  The July 2014 newsletter and similar newsletters feature advertisements for competitors of ShipStation who offer services or products that are substantially similar to those offered by ShipStation.

47.     Counsel for ShipStation notified Endicia of its breach of Section 7.7 of the 2013 Endicia-ShipStation Agreement via a letter signed by M. Craig Tyler dated September 15, 2014.

## CAUSES OF ACTION

### A.  COUNT ONE: BREACH OF CONTRACT – NON-SOLICITATION

48.     ShipStation hereby incorporates the preceding paragraphs by reference.

49.     The 2013 Endicia-ShipStation Agreement was fully executed on November 22, 2013.

50.     Pursuant to the 2013 Endicia-ShipStation Agreement, Endicia agreed that it would not use any information obtained as a result of the 2013 Endicia-ShipStation Agreement to solicit customers of ShipStation with respect to services or products substantially similar to those offered by ShipStation.

51.     Endicia breached the 2013 Endicia-ShipStation Agreement by soliciting Customers of ShipStation by using email addresses obtained as a result of the 2013 Endicia-ShipStation Agreement to solicit customers of ShipStation with respect to services or products substantially similar to those provided to such customers by ShipStation via its newsletters.

52.     Endicia expressly agreed in the 2013 Endicia-ShipStation Agreement that any such solicitation of ShipStation's customers may cause irreparable harm entitling ShipStation to injunctive relief.

53.     Endicia's breach has caused and continues to cause ShipStation injury.

54.     ShipStation is entitled to punitive damages under Delaware law because Endicia's use of information as a result of the 2013 Endicia-ShipStation Agreement to solicit customers of ShipStation with respect to services or products substantially similar to those offered by

ShipStation amounts to tortious conduct and was malicious, willful, and wanton for the purpose of injuring ShipStation by depriving it of the benefits of the 2013 Endicia-ShipStation Agreement.

### B.  COUNT TWO: BREACH OF CONTRACT – CONFIDENTIALITY

55.     ShipStation hereby incorporates the preceding paragraphs by reference.

56.     The 2013 Endicia-ShipStation Agreement was fully executed on November 22, 2013.

57.     Pursuant to the 2013 Endicia-ShipStation Agreement, Endicia agreed that it would not directly or indirectly disclose or use ShipStation's Confidential Information or Trade Secrets except in connection with and performing the obligations of the 2013 Endicia-ShipStation Agreement or after giving reasonable notice to the ShipStation, to the extent required by law.

58.     Endicia breached the 2013 Endicia-ShipStation Agreement by directly and/or indirectly disclosing to the public an unredacted copy of the 2013 Endicia-ShipStation Agreement in the original Complaint and TRO in this case.  *See* Dkt. No. 1, Ex. 1 and Dkt. No. 5, Exs. P-1 and P-5.

59.     Endicia also breached the 2013 Endicia-ShipStation Agreement by directly and/or indirectly disclosing to the public Confidential Information of ShipStation in the original Complaint and TRO in this case.  *See* Dkt. No. 1, Ex. 1 and Dkt. No. 5, Exs. P-2 and P-5.

60.     Endicia expressly agreed in the 2013 Endicia-ShipStation Agreement that any such disclosure of Confidential Information and Trade Secrets of ShipStation may cause irreparable harm entitling ShipStation to injunctive relief.

61.     Endicia's breach has caused and continues to cause ShipStation injury.

62.     ShipStation is entitled to punitive damages under Delaware law because Endicia's direct and indirect disclosure to the public Confidential Information and Trade Secrets of ShipStation amounts to tortious conduct and was malicious, willful, and wanton for the purpose of injuring ShipStation by depriving it of the benefits of the 2013 Endicia-ShipStation Agreement.

## C.  COUNT THREE: DECLARATORY JUDGMENT – TERMINATION OF 2013 ENDICIA-SHIPSTATION AGREEMENT – CONFIDENTIALITY

63.     ShipStation hereby incorporates the preceding paragraphs by reference.

64.     The 2013 Endicia-ShipStation Agreement was fully executed on November 22, 2013.

65.     Either party of the 2013 Endicia-ShipStation Agreement may terminate the 2013 Endicia-ShipStation Agreement if the other party materially breaches any provision of the 2013 Endicia-ShipStation Agreement and does not cure such breach within thirty days of receiving written notice from the terminating party.

66.     ShipStation provided written notice to Endicia of Endicia's breach of Section 7.1 of the 2013 Endicia-ShipStation Agreement on August 19, 2014.

67.     Endicia had not cured its breach by September 19, 2014.

68.     Pursuant to 10 Del. C. §6501 or in the alternative Texas Civil Practice and Remedies Code 37 and/or 28 USC §2202, ShipStation seeks a declaration from the Court that per the express terms of the Agreement, the 2013 Endicia-ShipStation Agreement is terminated.

## D.  COUNT FOUR: DECLARATORY JUDGMENT – TERMINATION OF 2013 ENDICIA-SHIPSTATION AGREEMENT – NON-SOLICITATION

69.     ShipStation hereby incorporates the preceding paragraphs by reference.

70.     The 2013 Endicia-ShipStation Agreement was fully executed on November 22, 2013.

71.     Either party of the 2013 Endicia-ShipStation Agreement may terminate the 2013 Endicia-ShipStation Agreement if the other party materially breaches any provision of the 2013 Endicia-ShipStation Agreement and does not cure such breach within thirty days of receiving written notice from the terminating party.

72.     Counsel for ShipStation provided written notice to Endicia of Endicia's breach of Section 7.7 of the 2013 Endicia-ShipStation Agreement on September 15, 2014.

73.     Endicia cannot cure its breach by October 15, 2014.

74.     Pursuant to 10 Del. C. §6501 or in the alternative Texas Civil Practice and Remedies Code 37 and/or 28 USC §2202, ShipStation seeks a declaration from the Court that per the express terms of the Agreement, the 2013 Endicia-ShipStation Agreement is terminated.

**E.  COUNT FIVE: MISAPPROPRIATION OF TRADE SECRETS**

75.     ShipStation hereby incorporates the preceding paragraphs by reference.

76.     ShipStation's shipping volume information is a trade secret as defined by the Delaware Uniform Trade Secrets Act because such shipping information is information that (a) derives independent economic value from not generally being known to or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

77.     Endicia misappropriated ShipStation's trade secrets by (a) acquiring ShipStation's trade secret shipping volume information under the 2011 Endicia-ShipStation Agreement when

Endicia knew or had reason to know such shipping volume information was a ShipStation trade secret and (b) using the shipping volume information to target potential customers for Endicia's eBay shipping integration in violation of 6 Del. C. §2001 (2014).

78.     Endicia's misappropriation of ShipStation's trade secrets has caused and continues to cause ShipStation injury.

### F.  COUNT SIX: DECLARATORY JUDGMENT

79.     ShipStation hereby incorporates the preceding paragraphs by reference.

80.     Pursuant to 10 Del. C. §6501 or in the alternative Texas Civil Practice and Remedies Code 37 and/or 28 USC §2202, ShipStation seeks a declaration from the Court that per the express terms of the Agreement:

> a.  Causing Express One accounts to be switched on the back end from printing Endicia labels to printing Stamps.com labels does not violate Section 7.7 of the 2013 Endicia-ShipStation Agreement;

> b.  ShipStation may switch Express One accounts on the back end or solicit customers so long as it does not use any information obtained as a result of the 2013 Endicia-ShipStation Agreement;

> c.  Causing Express One accounts to be switched on the back end from printing Endicia labels to printing Stamps.com labels for customers who signed up for a ShipStation account 1) without using a tracked link containing an identifier unique to Endicia, or 2) with a tracked link unassociated with Endicia, or 3) with a customer's own previously-used URL does not violate any provision of the 2013 Endicia-ShipStation Agreement;

d.   When the 2013 Endicia-ShipStation Agreement  is terminated, Section 7.7 of the 2013 Endicia-ShipStation Agreement is terminated immediately;

e.   Customers who signed up for ShipStation before the execution of the 2013 Endicia-ShipStation Agreement are not covered by the 2013 Endicia-ShipStation Agreement.

## G.  COUNT SEVEN: DECLARATORY JUDGMENT - 2013 ENDICIA-SHIPSTATION AGREEMENT – INDEFINITE AND UNENFORCEABLE

81.   ShipStation hereby incorporates the preceding paragraphs by reference.

82.   Section 1.3 of the 2013 Endicia-ShipStation Agreement defines "Customer." "Customer – has the meaning set forth in Paragraph A of Recitals."

83.   Paragraph A of the Recitals of the 2013 Endicia-ShipStation Agreement states in relevant part, "One such agreement (the "USPS Agreement") allows Endicia to license other software providers to embed the Endicia Label Server service described in more detail in Exhibit A attached hereto ("ELS") in the application(s) they provide their customers ("Customers") in order to allow Customers to print their own shipping labels with appropriate postage."

84.   "Customers of Endicia" only appears in Section 7.7 of the 2013 Endicia-ShipStation Agreement.  Section 7.7 does not define "Customers of Endicia."  However, the term "Customers of Endicia" is central to the scope of Section 7.7 and is material to determining whether a breach has occurred.

85.   The parties course of dealing did not provide a definition of the material term "Customers of Endicia."

86.     "Customers of Endicia" is susceptible to different, reasonable interpretations. Accordingly, Section 7.7 of the 2013 Endicia-ShipStation Agreement fails to provide a reasonable standard for determining whether a breach has occurred.

87.     Pursuant to 10 Del. C. § 6501 or in the alternative Texas Civil Practice and Remedies Code 37 and/or 28 USC § 2202, ShipStation seeks a judicial determination that the 2013 Endicia-ShipStation Agreement is indefinite and therefore unenforceable because it is vague and ambiguous, or otherwise contradictory with respect to the term "Customers of Endicia."

88.     In the alternative, should the Court find 2013 Endicia-ShipStation Agreement not to be fatally indefinite, ShipStation seeks a declaration from the Court that a "Customer of Endicia" be defined as "a customer who signed up for a ShipStation account through a tracked link containing an identifier unique to Endicia."

### PRAYER FOR RELIEF

WHEREFORE, ShipStation prays that this Court:

a.  Find that Endicia has materially breached the 2013 Endicia-ShipStation Agreement;

b.  Award direct damages to ShipStation for Endicia's breach;

c.  Find that ShipStation has not breached the 2013 Endicia-ShipStation Agreement;

d.  Declare that the 2013 Endicia-ShipStation Agreement is terminated;

e.  Declare that the 2013 Endicia-ShipStation Agreement is indefinite and therefore unenforceable;

f.  Declare each count of ShipStation's declaratory judgment counterclaims be granted;

g.  Award damages to ShipStation for Endicia's misappropriation of ShipStation's trade secrets;

h.  Award ShipStation any other relief, in law and in equity, to which the Court finds ShipStation is justly entitled.

Dated:  October 17, 2014

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/: M. Craig Tyler
      M. CRAIG TYLER
      TX State Bar No. 00794762
      ctyler@wsgr.com
      GEOFFREY W. HEAVEN
      TX State Bar No. 24090159
      gheaven@wsgr.com

      900 S. Capital of Texas Highway
      Las Cimas IV, 5th Floor
      Austin, Texas 78746
      Telephone: (512) 338-5400
      Facsimile: (512) 338-5499

      **Attorneys for Defendant**
      **AUCTANE L.L.C. D/B/A**
      **SHIPSTATION**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2014, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which sent notification of such filing to all parties.

I further certify that I have served via e-mail to the any non-CM/ECF participants.


*/s/* M. Craig Tyler
M. Craig Tyler