**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| PSI SYSTEMS, INC. d/b/a ENDICIA, | § | |
| | § | |
| Plaintiff / Counter-Defendant, | § | |
| | § | |
| v. | § | Civil Action No: 1:14-cv-750 |
| | § | |
| AUCTANE L.L.C. d/b/a SHIPSTATION, | § | Jury Trial Demanded |
| | § | |
| Defendant / Counter-Plaintiff. | § | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

NOW COMES PSI Systems, Inc., d/b/a Endicia, ("Endicia") and for its Second Amended Complaint against Defendant Auctane L.L.C., d/b/a ShipStation, ("Auctane") alleges as follows:

**I.**
**PARTIES**

1.      Plaintiff Endicia is a California corporation with its principal office located at 385 Sherman Avenue, Palo Alto, California.  Endicia is in the businesses of (1) shipping and mail software automation, and (2) supporting the entire line of United States Postal Service ("USPS") products allowing customers to produce the entire spectrum of USPS shipping labels complete with tracking, postage, and insurance.

2.      Defendant Auctane is a Texas limited liability company with its principal office located at 2815 Exposition Boulevard, Austin, Texas.  Among other things, Auctane does business as "ShipStation."  ShipStation is in the business of providing a web-based software service to help online retailers organize, fulfill, and ship their orders.

## II.
## JURISDICTION

3.      Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

4.      This Court has personal jurisdiction over Auctane because Auctane is a citizen of the State of Texas and conducts systematic and continuous business in the State of Texas.

## III.
## VENUE

5.      Venue is proper pursuant to 28 U.S.C. § 1391 because Auctane is resident of the Western District of Texas.

## IV.
## FACTUAL BACKGROUND

**The 2011 Agreement**

6.      Endicia and Auctane have done business with each other since the start of ShipStation in September 2011.  For over three years, ShipStation subscribers, in the course of fulfilling their USPS shipping needs, used the Endicia Label Server ("ELS") service to print USPS postage labels.

7.      Endicia has various agreements with the USPS pursuant to which Endicia is an approved PC Postage Provider.  PC Postage is approved third-party vendor software that individuals can use to pay for and print their postage using their own computer, printer, and Internet connection.  There are primarily three approved PC Postage Providers:  Stamps.com, Pitney Bowes, and Endicia.

8.      As part of its offerings, Endicia licenses other software companies to integrate the ELS service.  The ELS service is a proprietary software program that allows customers to print a

complete shipping label, including postage, destination address, return address, tracking information, and delivery confirmation.  The ELS service also allows customers to apply for and receive postage refunds.  Endicia owns the entire right, title and sole interest in and to the ELS service.

9.        On or about August 1, 2011, Endicia and Auctane executed a valid and enforceable agreement ("2011 Agreement").  Pursuant to the 2011 Agreement, Endicia granted Auctane a non-exclusive, non-transferable license for the ELS service in exchange for certain service fees and subject to certain volume-based rebates.  The Agreement permitted Auctane to offer customers the ability to print USPS postage labels (either First Class or Priority/Express Mail postage) using the customer's own computers.

10.       The 2011 Agreement defined the term "Customers" under that Agreement as follows:

> Endicia has various agreements with the USPS pursuant to which Endicia is an approved postage provider.  One such agreement (the "USPS Agreement") allows Endicia to license other software providers to embed the Endicia Label Server service described in more detail in Exhibit A attached hereto ("ELS") in the application(s) they provide their customers ("Customers") in order to allow Customers to print their own shipping labels with appropriate postage.

**The Launch of ShipStation by Auctane**

11.       Capitalizing on the new relationship created by the 2011 Agreement, Auctane launched ShipStation in September 2011.  The 2011 Agreement allowed Auctane to embed the ELS service in applications that ShipStation provided to its subscribers in order to allow them to print their own shipping labels with appropriate postage.  Auctane publicly introduced ShipStation with an October 19, 2011 press release, which stated in part that:

> Each ShipStation subscription includes a free DYMO Endicia account, which allows users to print all classes of USPS postage.  ShipStation also

integrates with Express 1, a government partner of the US Postal Service, providing discounted rates on USPS Priority and Express Mail.

12.     Rapid Enterprises, Inc., d/b/a "Express One" or "Express 1," (hereinafter "Express One") is a USPS postage reseller.  Pursuant to a relationship it has with the USPS, Express One buys Priority and Express Mail shipping postage from Endicia and then resells such USPS Priority and Express Mail postage at a discount to shippers.

13.     Under the 2011 Agreement, Endicia and ShipStation followed a course of dealing whereby customers who signed up for a ShipStation subscription received a free Endicia account, thereby allowing the customers to print their own USPS shipping labels using the Endicia ELS service.  For USPS First Class Mail, the customers used the ELS service to print their USPS shipping labels.  For USPS Priority or Express Mail, these customers were offered discounts available from Express One and used the Endicia ELS service to print their USPS postage labels.

**The 2013 Agreement**

14.     In February 2013, Nathan Jones was hired as the CEO of Auctane.  One of Mr. Jones' objectives in 2013 was to negotiate a new agreement with Endicia to apply to the existing course of dealing and business described above.  The new agreement sought to extend the term of the 2011 Agreement an additional three years so that Endicia and ShipStation could continue successfully to grow the business they had built together since September 2011.

15.     On or about November 22, 2013, Endicia and Auctane executed a valid and enforceable agreement ("2013 Agreement"), which terminated, replaced, and superseded the 2011 Agreement.  The 2013 Agreement and subsequent amendment are filed under seal in this matter (*See,* ECF Nos. 1-1, 38-1) and are specifically incorporated herein by reference under Federal Rule of Civil Procedure 10(c).

16.     The 2013 Agreement also licensed the Endicia ELS service to Auctane which allowed ShipStation to embed the ELS service in the applications ShipStation provides to its subscribers, in turn allowing such subscribers to print their own Endicia made shipping labels with appropriate postage.

17.     Endicia entered into the 2013 Agreement with Auctane with the express understanding that (a)  ShipStation subscribers who chose Endicia as the  provider of their First Class Mail postage labels would print shipping labels using the ELS service and thus become Customers of Endicia under the 2013 Agreement, and (b) ShipStation subscribers who used Express One to get discounted pricing on USPS Priority or Express Mail would print shipping labels using the ELS service and thus also become Customers of Endicia under the 2013 Agreement.

18.     The 2013 Agreement defined the term "Customers" in the same manner as defined in the 2011 Agreement.  The 2013 Agreement does not distinguish between customers who printed USPS First Class Mail postage labels using the Endicia ELS service and those who printed discounted USPS Priority and Express Mail labels through Express One using the Endicia ELS service.

19.     Under the 2013 Agreement and up to July 22,  2014, Endicia and Auctane followed a course of dealing whereby ShipStation subscribers who used Express One to get discounted pricing were provided USPS Priority and Express Mail shipping labels using the ELS service.  The only exception to this course of dealing occurred with respect to ShipStation subscribers who had accounts with Stamps.com.  In such instances (which constituted less than 10% of the total transactions involving Express One), ShipStation subscribers who purchased

discounted postage through Express One were provided USPS shipping labels using the Stamps.com Web Services ("SWS").

20.     Under this course of dealing, customers paid ShipStation subscription fees, thereby becoming ShipStation subscribers.  Customers used Express One to get discounted pricing for USPS Priority and Express Mail.  These customers used the Endicia ELS service to print Endicia shipping labels, thereby becoming Customers of Endicia as defined under the 2013 Agreement.

**The Stamps Acquisition of Auctane**

21.     At some point in 2013, Auctane and Stamps.com began discussions whereby Stamps.com would acquire an ownership in interest in Auctane.

22.     On June 10, 2014, Stamps.com entered into a Membership Interest Purchase Agreement ("MIPA") with Auctane, including all the members of Auctane -- Byron Wier, Jason Hodges, and Nathan Jones.  On the same date, Stamps.com and Auctane consummated the purchase transaction contemplated by the MIPA.  Stamps.com acquired 100% of the equity interests of Auctane, including ShipStation.  As of the close of this acquisition, Auctane became a wholly-owned subsidiary of Stamps.com.

23.     Stamps.com acquired Auctane for up-front consideration of $50 million in cash plus performance-linked earn-out consideration of up to 768,900 shares of Stamps.com common stock.  The performance linked earn-out payment of Stamps.com shares to former equity members of Auctane is based on the achievement of certain financial measures within a future time period.  There are two future periods in which the earn-out payment is to be calculated.  The first earn-out period is based on the achievement of certain financial measures during the six months ending December 31, 2014.  The second earn-out period is based on the achievement of

certain financial measures during the twelve months ending December 31, 2015. The range of Stamps.com shares available for the performance linked earn-out for both periods is between 576,675 to 768,900 shares, provided a minimum threshold for the financial measures is achieved. The MIPA requires Auctane to migrate customers, including customers who were using the Endicia ELS service within ShipStation, to Stamps.com's SWS. Furthermore, the performance-linked earn-out consideration rewards certain Auctane executives for causing as many users of the Endicia ELS service as possible to switch to using Stamps.com's SWS to print USPS shipping labels

**Plotting the "Migration"**

24.     To satisfy Auctane's obligation to migrate customers of Endicia to Stamps.com under the MIPA, Auctane and Stamps.com created a secret plan to switch customers from Endicia to Stamps.com. This plan was described in an e-mail dated July 18, 2014, from Ben Zhang, an employee of Stamps.com, to Jason Hodges of Auctane about the migration process, which, among other things, included simulating the set-up of a Stamps.com account for an Endicia customer (without actually creating the account) and then targeting an initial batch of 50 to 100 of Endicia customers so as to not alarm Endicia. ShipStation would then solicit the customer to switch to Stamps.com SWS by confirming the set-up of an actual Stamps.com account for the customer. Once the customer confirmed its Stamps.com account, the customer would lose access to its Endicia account and the Endicia account would be closed.

25.     Since at least July 2014, ShipStation offered a new version of ShipStation to certain customers of Endicia as "beta testers". On or around July 30, 2014, ShipStation offered the new version to all customers of Endicia.

26.     Customers of Endicia used the new version of ShipStation without any knowledge and consent that the new version only allowed printing labels using the Stamps.com SWS, and did not support the Endicia ELS server.

27.     No employee or representative of Auctane told any customer of Endicia that the new version would not support Endicia.  Further, no employee or representative of Auctane informed Endicia that the new version of ShipStation being offered to customers of Endicia did not support the Endicia ELS server.

**Plotting the "Switch"**

28.     Auctane also secretly planned to switch customers of Endicia who were receiving discounted postage rates through Express One for USPS Priority and Express Mail to Stamps.com through a "back-end modification" as part of satisfying its migration obligation to Stamps.com under the MIPA.  No employee or representative of Auctane informed Endicia about this plan to switch customers of Endicia to Stamps.com.

29.     In order to switch customers who were printing shipping labels with the ELS service through Express One to Stamps.com, Auctane needed Express One to activate additional postage meters with Stamps.com.

30.     On June 17, 2014, Jason Hodges of Auctane wrote to Colby Clark, the President and Managing Director of Express One, that Auctane was preparing for a scenario whereby Endicia may attempt to move customers using the ELS service away from ShipStation and Express One to a different shipping platform. Accordingly, Auctane wanted Express One to create 20 additional postage meters only in the event Endicia undertook to solicit customers away from ShipStation and Express One

31.     On July 22 or 23, 2014, Jim Bowers, the Chief Financial Officer of Express One,
authorized 20 new Stamps.com postage meters, increasing the number of Express One's funded
Stamps.com postage meters from approximately 45 funded meters to 65 funded meters based on
Auctane's false contention that Endicia intended to move customers away from Express One.

**Concealing the "Switch" and "Migration"**

32.     Beginning in June, 2014, Rick Hernandez of Endicia asked Nathan Jones, the
CEO of Auctane, whether Auctane had a plan to attempt to switch customers who had been
printing Endicia labels to printing Stamps.com labels.

33.     In response to Mr. Hernandez's inquiry, Mr. Jones sent an email to Mr.
Hernandez on June 25, 2014, falsely stating that "Nothing has changed on our end with regards
to Endicia and existing accounts within ShipStation."

34.     The next morning (on June 26, 2014), Mr. Hernandez of Endicia wrote back to
Mr. Jones of Auctane thanking him for his assurances and, in reliance on Mr. Jones'
misrepresentation, stated that nothing would change on Endicia's side either.

35.     Later on the same day, in a separate email exchange between Mr. Jones and Ken
McBride, the CEO of Stamps.com, Auctane and Stamps.com discussed switching all customers
who were printing Endicia USPS postage labels using the Endicia ELS to printing USPS labels
purchased from Stamps.com.

**Making the "Switch"**

36.     On the night of July 23, 2014, Jason Hodges, the CTO of Auctane, unilaterally
began switching Priority and Express Mail customers who, using the Express One discount, had
been printing Endicia shipping labels using Endicia's ELS service to Stamps.com.  Auctane did
so without notifying Endicia, Express One, or any customers whom it switched from Endicia to

Stamps.com and despite Mr. Jones' assurances to Endicia less than a month before that, "Nothing has changed our end with regards to Endicia and existing accounts within ShipStation.

37.     On the daily report of customers printing postage through Express One on July 24, 2014, only a handful of Endicia's customers still appeared there, whereas the day before, there were over 3,800 such customers listed.  At that point, Endicia could not view any of its proprietary data regarding these customers as it had been able to for almost three years since the launch of ShipStation in September, 2011.  At that point, Endicia had no way to contact its own customers in order to explain what happened.  Nor could Endicia see the postage printing activity of these customers as it had been able to prior to July 24, 2014.

38.     The void left by Endicia's inability to communicate with its own customers was immediately filled by Auctane and Stamps.com.  As the inquiries from these customers started, Auctane seized the opportunity to put out its own message to these customers, without any input or involvement from Endicia.

39.     On or about July 24, 2014, one of Endicia's customers notified Endicia that its account was switched from Endicia to Stamps.com without the customer's knowledge or consent.  At that time, Endicia became aware that Auctane had switched and/or solicited customers from Endicia to Stamps.com and had disclosed and/or misappropriated Endicia's confidential information and/or trade secrets to Stamps.com.

**V.**
**CAUSES OF ACTION**

**COUNT ONE**
**BREACH OF CONTRACT (NON-SOLICITATION)**

40.     Endicia hereby incorporates the preceding paragraphs by reference.

41.     The 2013 Agreement is a valid and enforceable contract of which Endicia and Auctane are the proper parties.

- 10 -

42.     The 2013 Agreement includes the following valid and enforceable non-solicitation provision:

> **7.7  Non-Solicitation of Customers.** Endicia will not use any information obtained as a result of this Agreement to solicit Customers of Partner with respect to services or Products substantially similar to those provided to such Customer by Partner. Partner will not use any information obtained as a result of this Agreement to solicit Customers of Endicia with respect to services or Products substantially similar to those provided to such Customer by Endicia.

43.     The term "Customers of Endicia" in the 2013 Agreement means any person or entity which uses the ELS service, in the applications that ShipStation provided to its subscribers, in order to print their own shipping labels with appropriate postage.

44.     To the extent "Customers of Endicia" is vague or ambiguous, the plain and ordinary meaning of "customers" confirms that "Customers of Endicia" in the 2013 Agreement means persons or entities which use the ELS service, in the applications that ShipStation provided to its subscribers, to purchase USPS shipping labels with appropriate postage from Endicia.

45.     To the extent "Customers of Endicia" is vague or ambiguous, the course of dealing between Auctane and Endicia for nearly three years, from September, 2011 to July, 2014, including the parties' performance of the 2011 Agreement, confirms that "Customers of Endicia" in the 2013 Agreement are persons or entities which use the ELS service, in the applications that ShipStation provided to its subscribers, to purchase USPS shipping labels with appropriate postage.

46.     To the extent "Customers of Endicia" is vague or ambiguous, the negotiations between Auctane and Endicia of the 2013 Agreement confirm that "Customers of Endicia" in that Agreement means persons or entities which used the ELS service, in the applications that

ShipStation provided to its subscribers, in purchase USPS shipping labels with appropriate postage.

47.     Article 7.3 of the 2013 Agreement states as follows:

> **Remedies**.  Each Party acknowledges that the other Party may suffer irreparable damage in the event of any breach of the provisions of this Article 7.  Accordingly, in such event, a Party will be entitled to temporary, preliminary and final injunctive relief as well as any other applicable remedies at law or in equity against the party who has breached or threatened to breach this Article 7.

48.     Auctane breached the 2013 Agreement by using information obtained as a result of the 2013 Agreement in order to migrate, switch, and otherwise solicit customers from Endicia to Stamps.com with respect to services or products substantially similar to those offered by Endicia.  Information obtained from the parties' performance of the 2013 Agreement included, but was not limited to, the identification of existing Endicia ELS users, customer account records created as a result of the 2013 Agreement (including the type and volume of shipping labels being purchased by such customers) and identifying which customers Auctane determined not to switch by virtue of its interpretation of terms of the 2013 Agreement.

49.     Auctane's breach has caused and continues to cause Endicia irreparable injury and damages due to the solicitation of its customers by Auctane to Stamps.com.

50.     Endicia is entitled to punitive damages under Delaware law[1] because Auctane's use of information obtained as a result of the 2013 Agreement to solicit customers of Endicia with respect to services or products substantially similar to those offered by Endicia amounts to tortious conduct and was malicious, willful, and wanton for the purpose of injuring Endicia by depriving it of the benefits of the 2013 Agreement.

---

[1] Pursuant to Article 10.9, the 2013 Agreement is governed by the laws of the State of Delaware, excluding its conflict of laws rules.

- 12 -

**COUNT TWO**
**BREACH OF CONTRACT (MISAPPROPRIATION OF**
**CONFIDENTIAL INFORMATION AND TRADE SECRETS)**

51.     Endicia hereby incorporates the preceding paragraphs by reference.

52.     The 2013 Agreement is a valid and enforceable contract of which Endicia and Auctane are the proper parties thereto.

53.     The 2013 Agreement includes the following valid and enforceable confidential and trade secret provision:

> **7.1   Duties Related to Confidential Information and Trade Secrets.** The Parties recognize that in the course of performing under this Agreement, both Parties have had and will continue to have access to certain Confidential Information and Trade Secrets belonging to the other Party and each desires that any such Confidential Information and Trade Secrets remain confidential. Each Party will use the same means it uses to protect its own Confidential Information and Trade Secrets, but in no event less than reasonable means, and will not directly or indirectly disclose or use the other Party's Confidential Information or Trade Secrets, except that:
>
> > a.      a Party may use the other Party's Confidential Information in connection with and performing the obligations of this Agreement, but may disclose it only internally on a need-to-know basis after informing the recipients that it is confidential and directing them to comply with this Agreement;
> >
> > b.      after giving reasonable notice to the other Party, a Party may disclose the other Party's Confidential Information to the extent required by law;
> >
> > c.      on request, a Party will return or destroy all records that contain or reflect the other Party's Confidential Information.

54.     As part of its performance of the 2013 Agreement, Endicia disclosed confidential information and/or trade secrets to Auctane with respect to customers who used Express One to purchase Endicia postage labels via the Endicia ELS service.   The confidential information and/or trade secrets included the following:

- 13 -

     (a)     customer information including customer names, account profiles, email addresses, and physical addresses which can be used for sales, solicitation and customer account conversion;

     (b)     present and historical shipping volumes, shipping types, shipping activity trends and other marketing characteristics of individual customers; and

     (c)     destination address information that could be used for marketing purposes.

55.     Auctane misappropriated and improperly disclosed the foregoing confidential information and trade secrets to Endicia's direct competitor, Stamps.com, on or about July 22 and 23, 2014 when Jason Hodges caused Endicia's confidential information to be provided to Stamps.com as a result of the switch of customers who had been printing Endicia labels using the Endicia ELS to Stamps.com.

56.     Auctane's breach has caused and continues to cause Endicia irreparable harm and damages as a result of Auctane's misappropriation of Endicia's confidential customer information to Stamps.com.

57.     Endicia is entitled to punitive damages under Delaware law because Auctane's disclosure and intentional misappropriation of Endicia's confidential information and/or trade secrets amounts to tortious conduct and was malicious, willful, and wanton for the purpose of injuring Endicia by depriving it of the benefits of the 2013 Agreement.

## COUNT THREE
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

58.     Endicia hereby incorporates the preceding paragraphs by reference.

59.     The 2013 Agreement is a valid and enforceable contract of which Endicia and Auctane are the proper parties.

60.     The 2013 Agreement imposes upon Endicia and Auctane an implied covenant of good faith and fair dealing.

61.     Under Federal Rule of Civil Procedure 8(d)(2), Endicia alleges the following specific implied contractual obligations:

(a)     Auctane will not migrate, switch, redirect, divert, or otherwise solicit customers using the ELS service and their accounts from Endicia to competitors of Endicia;

(b)     Auctane will refrain from self-dealing for its own economic benefit to the detriment of Endicia;

(c)     Auctane will refrain from arbitrary or unreasonable conduct which has the effect of preventing Endicia from receiving the benefits of the bargain in the 2013 Agreement.

62.     Auctane breached the implied covenant of good faith and fair dealing in the foregoing ways.

63.     Auctane's breach has caused and continues to cause Endicia injuries and damages.

**COUNT FOUR**
**TORTIOUS MISAPPROPRIATION OF TRADE SECRETS**

64.     Endicia hereby incorporates the preceding paragraphs by reference.

65.     Endicia owned the following trade secret information with respect to customers who used the Endicia ELS service to print Endicia labels and who received discounted postage rates through Express One:

(a)     customer information including customer names, account profiles, email addresses, and physical addresses which can be used for sales, solicitation and customer account conversion;

      (b)     present and historical shipping volumes, shipping types, shipping activity trends and other marketing characteristics of individual customers; and

      (c)     destination address information that could be used for marketing purposes.

66.    Endicia provided the foregoing confidential information and trade secrets to Auctane pursuant to Article 7.1 of the 2013 Agreement.

67.    Auctane had a duty to maintain the confidentiality of Endicia's confidential and trade secret information.

68.    Auctane misappropriated and improperly disclosed the foregoing confidential information and trade secrets to Endicia's direct competitor, Stamps.com, on or about July 22 and 24, 2014 when Jason Hodges caused Endicia's confidential information to be provided to Stamps.com as a result of the switch of customers who had been printing Endicia labels using the Endicia ELS to Stamps.com.

69.    Auctane's misappropriation and disclosure of Endicia's confidential information and trade secrets have caused and continue to cause Endicia to incur damages.

## COUNT FIVE
## DECLARATORY JUDGMENT

70.    Endicia hereby incorporates the preceding paragraphs by reference.

71.    Upon information and belief, the MIPA between Auctane and Stamps.com contains provisions requiring Auctane to migrate customers who are currently using the Endicia ELS service to print USPS postage to Stamps.com. As a result of these provisions, Auctane and Stamps.com created a separate version of the ShipStation software that effectively precludes ShipStation subscribers who are currently printing Endicia First Class Postage labels from continuing to do so, and instead would cause these customers to print the same type labels using the Stamps.com's SWS label service. Endicia believes that Auctane will continue to attempt to

migrate customers of Endicia away from Endicia to Stamps.com in accordance with the terms of the MIPA.

72.     Endicia seeks a declaratory judgment from the Court that the valid and enforceable terms of the 2013 Agreement provide that:

(a)     Auctane is prohibited, either directly or through its affiliated or parent companies, from migrating, switching, diverting, and/or otherwise soliciting Endicia's customers to use Stamps.com's SWS label service to print USPS First Class Mail postage labels instead of purchasing such labels from Endicia.

(b)     Auctane is prohibited from disclosing to Stamps.com the following confidential and/or trade secret information belonging to Endicia with respect to customers who are printing USPS First Class Mail postage labels: customer names, account profiles, email addresses, and physical addresses which can be used for sales, solicitation and customer account conversion, present and historical shipping volumes, shipping types, shipping activity trends and other marketing characteristics of individual customers, destination address information that could be used for marketing purposes, the customer information, data, shipping history from November 12, 2013 through at least November 12, 2019.

## COUNT SIX
## FRAUD

73.     Endicia hereby incorporates the preceding paragraphs by reference.

74.     In response to a direct inquiry by Rick Hernandez of Endicia to Nathan Jones, the CEO of Auctane as to whether the acquisition of Auctane by Stamps.com would affect the

customers printing Endicia labels through ShipStation, Mr. Jones made the following fraudulent statement in a June 25, 2014, email to Mr. Hernandez: "Nothing has changed on our end with regards to Endicia and existing accounts within ShipStation."  Mr. Jones made several similar oral misrepresentations to Mr. Hernandez in or about June, 2014, immediately after the acquisition of Auctane by Stamps.com was announced.

75.     The foregoing misrepresentations and omissions made by Auctane to Endicia were material and false.

76.     Auctane knew the foregoing misrepresentations and omissions were material and false.

77.     Auctane made the foregoing misrepresentations and omissions with the intent that Endicia and others would act based on the misrepresentations and omissions.

78.     Endicia relied on Auctane's misrepresentations and omissions by refraining from taking action to protect its relationship with its customers who were printing Endicia labels, and to capture, preserve and protect from disclosure the customer data belonging to Endicia and which it had access to prior to the switch by Auctane of in excess of 3800 customers to Stamps.com.

79.     These misrepresentations and omissions by Auctane have caused and continue to cause Endicia injuries and damages.

80.     Based on the intentional, willful and wanton conduct of Auctane, Endicia is entitled to exemplary damages because the foregoing injuries and damages to Endicia result from Auctane's fraudulent conduct alleged in this Count.

**COUNT SEVEN**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS**

81.     Endicia hereby incorporates the preceding paragraphs by reference.

82.     Auctane tortiously interfered with Endicia's prospective business relations by the following conduct:

(a)     migrating, switching, and/or otherwise soliciting prospective customers from Endicia to Stamps.com; and

(b)     misrepresenting and failing to disclose the migration, switch, and/or solicitation to Endicia, Express One, and prospective customers.

83.     There was a reasonable probability that Endicia would have entered into prospective additional business relationships with its customers, who were using the ELS service to print shipping labels with appropriate postage, but for Auctane's tortious interference with Endicia's ongoing and future relationships with its customers.

84.     Auctane acted willfully, or with a conscious disregard, with respect to Endicia's relationships with its customers and/or knew the interference with these relationships was certain or substantially certain to occur as a result of the foregoing conduct.

85.     The foregoing conduct by Auctane was independently tortious as alleged in Counts Four and Six.

86.     Auctane's actions as alleged in this Count have proximately caused and continues to cause Endicia injuries and damages.

87.     Endicia is entitled to exemplary damages because the foregoing injuries and damages to Endicia result from the fraudulent and willful conduct engaged in by Auctane and intending to harm Endicia.

**COUNT EIGHT**
**CIVIL CONSPIRACY**

88.     Endicia hereby incorporates the preceding paragraphs by reference.

89.     Auctane and Stamps.com engaged in a conspiracy to accomplish an unlawful purpose or to accomplish a purpose by unlawful means as set forth in this complaint.

90.     Auctane and Stamps.com agreed, or had a meeting of the minds, on a common unlawful purpose or course of action, including:

(a)     migrating, switching, and/or otherwise soliciting customers from Endicia to Stamps.com in order to interfere with and deprive Endicia from further and prospective economic and business advantages with respect to such customers;

(b)      misappropriating confidential and trade secret information belonging to Endicia and providing such information to Stamps.com; and

(c)     fraudulently misrepresenting to Endicia that nothing had changed with respect to Endicia's business with ShipStation, thus inducing Endicia from taking action to protect its customer relationships and confidential information.

91.     Auctane committed one or more of the foregoing acts in furtherance of the common unlawful purpose or course of action.

92.     The foregoing conduct by Auctane was independently tortious as alleged in Counts Four and Six.

93.     Auctane's actions as alleged in this Count have proximately caused and continues to cause Endicia injuries and damages.

94.     Endicia is entitled to exemplary damages because the foregoing injuries and damages to Endicia result from the fraudulent and willful conduct engaged in by Auctane and intending to harm Endicia.

**VI.**
**CONDITIONS PRECEDENT**

95.     All conditions precedent for the claims above have been performed or have occurred.

**VII.**
**REQUEST FOR PERMANENT INJUNCTION**

96.     Endicia hereby incorporates the preceding paragraphs by reference.

97.     Pursuant to Local Rule of Court 65-1, Endicia will file separate an application for a permanent injunction enjoining Auctane from breaching the above-referenced common law and contractual duties and requesting this Court to enter an order that:

(a)     Auctane must reverse the migration, switch, diversion, and/or other solicitation of Endicia's customers from Stamps.com back to Endicia in order to print USPS Priority, and/or USPS Express Mail through Express One.

(b)     Auctane must cease migrating, switching, diverting, and/or otherwise soliciting customers of Endicia to use services similar to those offered by Endicia.  Specifically, Auctane must not migrate, switch, divert, and/or otherwise solicit Endicia's customers to Stamps.com or any other postage printing technology.  To the extent that Auctane has already done so, Auctane must redirect those customers back to Endicia.

(c)     Auctane must cease using Auctane's software to impair, restrict, or disable the capabilities or performance of the ELS service.

(d)     Auctane must cease using (except in performing its obligations under the 2013 Agreement) or disclosing to third parties Endicia's confidential information and/or trade secrets.

(e)     Auctane must take any and all measures necessary to allow Endicia complete visibility and access to its customers who are or were using the Endicia ELS system to print USPS postage labels.

## VIII.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Endicia prays for a judgment against Auctane for the relief set forth below:

(1)     compensatory damages;

(2)     punitive and exemplary damages;

(3)     pre and post judgment interest;

(4)     a permanent injunction from the Court as pleaded above;

(5)     a declaratory judgment from the Court as pleaded above;

(6)     such other and further relief to which Endicia may be justly entitled.

Plaintiff demands a trial by jury on all issues so triable.


Dated:  November 7, 2014                    Respectfully submitted,

By: /s/ Joseph J. Krasovec, III
       Joseph J. Krasovec, III (admitted *pro hac vice*)
       Andrew Porter (admitted *pro hac vice*)
       SCHIFF HARDIN LLP
       6600 Sears Tower
       Chicago, IL 60606
       Tel:    312-258-5500
       Fax:    312-258-5600
       Email: jkrasovec@schiffhardin.com
                 aporter@schiffhardin.com

       Roy A. Spezia
       GERMER BEAMAN & BROWN
       301 Congress Avenue
       Suite 1700
       Austin, TX 78701
       Tel:    512-472-0288
       Fax:    512-472-0721
       Email: rspezia@germer-austin.com

       *Attorneys for Plaintiff PSI Systems d/b/a Endicia*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies on this 7th day of November, 2014, that all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3).

/s/ Joseph J. Krasovec, III
Joseph J. Krasovec, III

10808-1537
CH2\15623264.1