# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| PSI SYSTEMS, INC. d/b/a ENDICIA, | § | |
| | § | |
| Plaintiff / Counter-Defendant, | § | |
| | § | |
| v. | § | Civil Action No: 1:14-cv-750 |
| | § | |
| AUCTANE L.L.C. d/b/a SHIPSTATION, | § | Jury Trial Demanded |
| | § | |
| Defendant / Counter-Plaintiff. | § | |
| | § | |

## DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendant Auctane L.L.C., d/b/a ShipStation, ("ShipStation") files this Answer to the Second Amended Complaint filed by Plaintiff PSI Systems, Inc., d/b/a Endicia, ("Endicia") in this Court on November 7, 2014.

## I.
## PARTIES

1.    Plaintiff Endicia is a California corporation with its principal office located at 385 Sherman Avenue, Palo Alto, California.  Endicia is in the businesses of (1) shipping and mail software automation, and (2) supporting the entire line of United States Postal Service ("USPS") products allowing customers to produce the entire spectrum of USPS shipping labels complete with tracking, postage, and insurance.

**ANSWER:** On information and belief, Endicia is a California corporation with its principal office located at 385 Sherman Avenue, Palo Alto, California 94306.  ShipStation lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 1.

2.     Defendant Auctane is a Texas limited liability company with its principal office located at 2815 Exposition Boulevard, Austin, Texas.  Among other things, Auctane does business as "ShipStation."   ShipStation is in the business of providing a web-based software service to help online retailers organize, fulfill, and ship their orders.

**ANSWER:** ShipStation admits the allegations contained in paragraph 2.

## II.
## <u>JURISDICTION</u>

3.     Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

**ANSWER:** ShipStation admits the allegations contained in paragraph 3.

4.     This Court has personal jurisdiction over Auctane because Auctane is a citizen of the State of Texas and conducts systematic and continuous business in the State of Texas.

**ANSWER:** ShipStation admits the allegations contained in paragraph 4.

## III.
## <u>VENUE</u>

5.     Venue is proper pursuant to 28 U.S.C. § 1391 because Auctane is resident of the Western District of Texas.

**ANSWER:** ShipStation admits the allegations contained in paragraph 5.

## IV.
## <u>FACTUAL BACKGROUND</u>

### <u>The 2011 Agreement</u>

6.     Endicia and Auctane have done business with each other since the start of ShipStation in September 2011.  For over three years, ShipStation subscribers, in the course of fulfilling their USPS shipping needs, used the Endicia Label Server ("ELS") service to print USPS postage labels.

**ANSWER:** ShipStation admits that Endicia and Auctane have done business with each other since at least September 2011.  ShipStation lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 6.

7.     Endicia has various agreements with the USPS pursuant to which Endicia is an approved PC Postage Provider.  PC Postage is approved third-party vendor software that

individuals can use to pay for and print their postage using their own computer, printer, and Internet connection.   There are primarily three approved PC Postage Providers: Stamps.com, Pitney Bowes, and Endicia.

**ANSWER:** On information and belief, ShipStation admits the allegations contained in paragraph

7.

8.      As part of its offerings, Endicia licenses other software companies to integrate the ELS service.  The ELS service is a proprietary software program that allows a customer to print a complete shipping label, including postage, destination address, return address, tracking information, and delivery confirmation.  The ELS service also allows customers to apply for and receive postage refunds.  Endicia owns the entire right, title and sole interest in and to the ELS service.

**ANSWER:** ShipStation lacks knowledge or information sufficient to form a belief as to the truth

of the allegations contained in paragraph 8.

9.      On or about August 1, 2011, Endicia and Auctane executed a valid and enforceable agreement ("2011 Agreement").  Pursuant to the 2011 Agreement, Endicia granted Auctane a non-exclusive, non-transferable license for the ELS service in exchange for certain service fees and subject to certain volume-based rebates.  The Agreement permitted Auctane to offer customers the ability to print USPS postage labels (either First Class or Priority/Express Mail postage) using the customer's own computers.

**ANSWER:** ShipStation admits that an Agreement ("2011 Endicia-ShipStation Agreement")

between Endicia and ShipStation was fully executed on August 1, 2011 and that the 2011

Endicia-ShipStation Agreement allowed ShipStation to embed the ELS service in the

applications it provides its customers in order to allow customers to print their own shipping

labels with appropriate postage, granted a license to the ELS service from Endicia to ShipStation,

and provided other services from Endicia to ShipStation.   Except as expressly admitted,

ShipStation denies the remaining allegations of paragraph 9 of the Second Amended Complaint.

10.    The 2011 Agreement defined the term "Customers" under that Agreement as follows:
        Endicia has various agreements with the USPS pursuant to which Endicia is an approved postage provider.  One such agreement (the "USPS Agreement") allows Endicia to license other software providers to embed the Endicia Label Server service described in more detail in Exhibit A

attached hereto ("ELS") in the application(s) they provide their customers ("Customers") in order to allow Customers to print their own shipping labels with appropriate postage.

**ANSWER:** ShipStation denies the allegations contained in paragraph 10.

## The Launch of ShipStation by Auctane

11.   Capitalizing on the new relationship created by the 2011 Agreement, Auctane launched ShipStation in September 2011.   The 2011 Agreement allowed Auctane to embed the ELS service in applications that ShipStation provided to its subscribers in order to allow them to print their own shipping labels with appropriate postage.  Auctane publicly introduced ShipStation with an October 19, 2011 press release, which stated in part that:

> Each ShipStation subscription includes a free DYMO Endicia account, which allows users to print all classes of USPS postage.  ShipStation also integrates with Express 1, a government partner of the US Postal Service, providing discounted rates on USPS Priority and Express Mail.

**ANSWER:** ShipStation denies the allegations contained in paragraph 11.

12.   Rapid Enterprises, Inc., d/b/a "Express One" or "Express 1," (hereinafter "Express One") is a USPS postage reseller.  Pursuant to a relationship it has with the USPS, Express One buys Priority and Express Mail shipping postage from Endicia and then resells such USPS Priority and Express Mail postage at a discount to shippers.

**ANSWER:** ShipStation admits that Express One is a postage reseller.  Except as expressly admitted, ShipStation denies the remaining allegations of paragraph 12 of the Second Amended Complaint.

13.   Under the 2011 Agreement, Endicia and ShipStation followed a course of dealing whereby customers who signed up for a ShipStation subscription received a free Endicia account, thereby allowing the customers to print their own USPS shipping labels using the Endicia ELS service.  For USPS First Class Mail, the customers used the ELS service to print their USPS shipping labels.  For USPS Priority or Express Mail, these customers were offered discounts available from Express One and used the Endicia ELS service to print their USPS postage labels.

**ANSWER:** ShipStation denies the allegations contained in paragraph 13.

## The 2013 Agreement

14.   In February 2013, Nathan Jones was hired as the CEO of Auctane.  One of Mr. Jones' objectives in 2013 was to negotiate a new agreement with Endicia to apply to the

existing course of dealing and business described above.  The new agreement sought to extend the term of the 2011 Agreement an additional three years so that Endicia and ShipStation could continue successfully to grow the business they had built together since September 2011.

**ANSWER:** ShipStation denies the allegations contained in paragraph 14.

15.    On or about November 22, 2013, Endicia and Auctane executed a valid and enforceable agreement ("2013 Agreement"), which terminated, replaced, and superseded the 2011 Agreement.  The 2013 Agreement and subsequent amendment are filed under seal in this matter (*See*, ECF Nos.  1-1, 38-1) and are specifically incorporated herein by reference under Federal Rule of Civil Procedure 10(c).

**ANSWER:** ShipStation admits that the 2013 Endicia-ShipStation Agreement was fully executed on November 22, 2013. ShipStation considers the 2013 Endicia-ShipStation Agreement terminated as a result of Endicia's breach. Except as expressly admitted, ShipStation denies the remaining allegations of paragraph 15 of the Second Amended Complaint.

16.    The 2013 Agreement also licensed the Endicia ELS service to Auctane which allowed ShipStation to embed the ELS service in the applications ShipStation provides to its subscribers, in turn allowing such subscribers to print their own Endicia made shipping labels with appropriate postage.

**ANSWER:** ShipStation denies the allegations contained in paragraph 16.

17.    Endicia entered into the 2013 Agreement with Auctane with the express understanding that (a) ShipStation subscribers who chose Endicia as the provider of their First Class Mail postage labels would print shipping labels using the ELS service and thus become Customers of Endicia under the 2013 Agreement, and (b) ShipStation subscribers who used Express One to get discounted pricing on USPS Priority or Express Mail would print shipping labels using the ELS service and thus also become Customers of Endicia under the 2013 Agreement.

**ANSWER:** ShipStation lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17.

18.    The 2013 Agreement defined the term "Customers" in the same manner as defined in the 2011 Agreement.  The 2013 Agreement does not distinguish between customers who printed USPS First Class Mail postage labels using the Endicia ELS service and those who printed discounted USPS Priority and Express Mail labels through Express One using the Endicia ELS service.

**ANSWER:** ShipStation denies the allegations contained in paragraph 18.

19.     Under the 2013 Agreement and up to July 22, 2014, Endicia and Auctane followed a course of dealing whereby ShipStation subscribers who used Express One to get discounted pricing were provided USPS Priority and Express Mail shipping labels using the ELS service.  The only exception to this course of dealing occurred with respect to ShipStation subscribers who had accounts with Stamps.com.  In such instances (which constituted less than 10% of the total transactions involving Express One), ShipStation subscribers who purchased discounted postage through Express One were provided USPS shipping labels using the Stamps.com Web Services ("SWS").

**ANSWER:** ShipStation denies the allegations contained in paragraph 19.

20.     Under this course of dealing, customers paid ShipStation subscription fees, thereby becoming ShipStation subscribers.   Customers used Express One to get discounted pricing for USPS Priority and Express Mail.   These customers used the Endicia ELS service to print Endicia shipping labels, thereby becoming Customers of Endicia as defined under the 2013 Agreement.

**ANSWER:** ShipStation denies the allegations contained in paragraph 20.

**The Stamps Acquisition of Auctane**

21.     At some point in 2013, Auctane and Stamps.com began discussions whereby Stamps.com would acquire an ownership in interest in Auctane.

**ANSWER:** ShipStation admits the allegations contained in paragraph 21.

22.     On June 10, 2014, Stamps.com entered into a Membership Interest Purchase Agreement ("MIPA") with Auctane, including all the members of Auctane -- Byron Wier, Jason Hodges, and Nathan Jones.  On the same date, Stamps.com and Auctane consummated the purchase transaction contemplated by the MIPA.  Stamps.com acquired 100% of the equity interests of Auctane, including ShipStation.  As of the close of this acquisition, Auctane became a wholly-owned subsidiary of Stamps.com.

**ANSWER:** ShipStation admits the allegations contained in paragraph 22.

23.     Stamps.com acquired Auctane for up-front consideration of $50 million in cash plus performance-linked earn-out consideration of up to 768,900 shares of Stamps.com common stock.  The performance linked earn-out payment of Stamps.com shares to former equity members of Auctane is based on the achievement of certain financial measures within a future time period.  There are two future periods in which the earn-out payment is to be calculated.  The first earn-out period is based on the achievement of certain financial measures during the six months ending December 31, 2014.  The second earn-out period is based on the achievement of certain financial measures during the twelve months ending December 31, 2015.  The range of Stamps.com shares available for

the performance linked earn-out for both periods is between 576,675 to 768,900 shares, provided a minimum threshold for the financial measures is achieved.  The MIPA requires Auctane to migrate customers, including customers who were using the Endicia ELS service within ShipStation, to Stamps.com's SWS.  Furthermore, the performance-linked earn-out consideration rewards certain Auctane executives for causing as many users of the Endicia ELS service as possible to switch to using Stamps.com's SWS to print USPS shipping labels.

**ANSWER:** ShipStation denies the allegations contained in paragraph 23.

### Plotting the "Migration"

24.     To satisfy Auctane's obligation to migrate customers of Endicia to Stamps.com under the MIPA, Auctane and Stamps.com created a secret plan to switch customers from Endicia to Stamps.com.  This plan was described in an e-mail dated July 18, 2014, from Ben Zhang, an employee of Stamps.com, to Jason Hodges of Auctane about the migration process, which, among other things, included simulating the set-up of a Stamps.com account for an Endicia customer (without actually creating the account) and then targeting an initial batch of 50 to 100 of Endicia customers so as to not alarm Endicia.  ShipStation would then solicit the customer to switch to Stamps.com SWS by confirming the set-up of an actual Stamps.com account for the customer.  Once the customer confirmed its Stamps.com account, the customer would lose access to its Endicia account and the Endicia account would be closed.

**ANSWER:** ShipStation denies the allegations contained in paragraph 24.

25.     Since at least July 2014, ShipStation offered a new version of ShipStation to certain customers of Endicia as "beta testers".  On or around July 30, 2014, ShipStation offered the new version to all customers of Endicia.

**ANSWER:** ShipStation denies the allegations contained in paragraph 25.

26.     Customers of Endicia used the new version of ShipStation without any knowledge and consent that the new version only allowed printing labels using the Stamps.com SWS, and did not support the Endicia ELS server.

**ANSWER:** ShipStation denies the allegations contained in paragraph 26.

27.     No employee or representative of Auctane told any customer of Endicia that the new version would not support Endicia.  Further, no employee or representative of Auctane informed Endicia that the new version of ShipStation being offered to customers of Endicia did not support the Endicia ELS server.

**ANSWER:** ShipStation admits the allegations contained in paragraph 27.

**Plotting the "Switch"**

28.     Auctane also secretly planned to switch customers of Endicia who were receiving discounted postage rates through Express One for USPS Priority and Express Mail to Stamps.com through a "back-end modification" as part of satisfying its migration obligation to Stamps.com under the MIPA.  No employee or representative of Auctane informed Endicia about this plan to switch customers of Endicia to Stamps.com.

**ANSWER:** ShipStation denies the allegations contained in paragraph 28.

29.     In order to switch customers who were printing shipping labels with the ELS service through Express One to Stamps.com, Auctane needed Express One to activate additional postage meters with Stamps.com.

**ANSWER:** ShipStation admits the allegations contained in paragraph 29.

30.     On June 17, 2014, Jason Hodges of Auctane wrote to Colby Clark, the President and Managing Director of Express One, that Auctane was preparing for a scenario whereby Endicia may attempt to move customers using the ELS service away from ShipStation and Express One to a different shipping platform.  Accordingly, Auctane wanted Express One to create 20 additional postage meters only in the event Endicia undertook to solicit customers away from ShipStation and Express One.

**ANSWER:** ShipStation denies the allegations contained in paragraph 30.

31.     On July 22 or 23, 2014, Jim Bowers, the Chief Financial Officer of Express One, authorized 20 new Stamps.com postage meters, increasing the number of Express One's funded Stamps.com postage meters from approximately 45 funded meters to 65 funded meters based on Auctane's false contention that Endicia intended to move customers away from Express One.

**ANSWER:** ShipStation denies the allegations contained in paragraph 31.

**Concealing the "Switch" and "Migration"**

32.     Beginning in June, 2014, Rick Hernandez of Endicia asked Nathan Jones, the CEO of Auctane, whether Auctane had a plan to attempt to switch customers who had been printing Endicia labels to printing Stamps.com labels.

**ANSWER:** On information and belief, ShipStation admits the allegations contained in paragraph

32.

33.     In response to Mr. Hernandez's inquiry, Mr. Jones sent an email to Mr. Hernandez on June 25, 2014, falsely stating that "Nothing has changed on our end with regards to Endicia and existing accounts within ShipStation."

**ANSWER:** ShipStation denies the allegations contained in paragraph 33.

34.    The next morning (on June 26, 2014), Mr. Hernandez of Endicia wrote back to Mr. Jones of Auctane thanking him for his assurances and, in reliance on Mr. Jones' misrepresentation, stated that nothing would change on Endicia's side either.

**ANSWER:** On information and belief, ShipStation admits that Mr. Hernandez of Endicia wrote

to Mr. Jones on June 26, 2014.  ShipStation lacks knowledge or information sufficient to form a

belief as to the truth of the remaining allegations contained in paragraph 34.

35.    Later on the same day, in a separate email exchange between Mr. Jones and Ken McBride, the CEO of Stamps.com, Auctane and Stamps.com discussed switching all customers who were printing Endicia USPS postage labels using the Endicia ELS to printing USPS labels purchased from Stamps.com.

**ANSWER:** ShipStation denies the allegations contained in paragraph 35.

**Making the "Switch"**

36.    On the night of July 23, 2014, Jason Hodges, the CTO of Auctane, unilaterally began switching Priority and Express Mail customers who, using the Express One discount, had been printing Endicia shipping labels using Endicia's ELS service to Stamps.com.  Auctane did so without notifying Endicia, Express One, or any customers whom it switched from Endicia to Stamps.com and despite Mr. Jones' assurances to Endicia less than a month before that, "Nothing has changed our end with regards to Endicia and existing accounts within ShipStation.

**ANSWER:** ShipStation denies the allegations contained in paragraph 36.

37.    On the daily report of customers printing postage through Express One on July 24, 2014, only a handful of Endicia's customers still appeared there, whereas the day before, there were over 3,800 such customers listed.  At that point, Endicia could not view any of its proprietary data regarding these customers as it had been able to for almost three years since the launch of ShipStation in September, 2011.  At that point, Endicia had no way to contact its own customers in order to explain what happened.  Nor could Endicia see the postage printing activity of these customers as it had been able to prior to July 24, 2014.

**ANSWER:** ShipStation denies the allegations contained in paragraph 37.

38.    The void left by Endicia's inability to communicate with its own customers was immediately filled by Auctane and Stamps.com.  As the inquiries from these customers

started, Auctane seized the opportunity to put out its own message to these customers, without any input or involvement from Endicia.

**ANSWER:** ShipStation denies the allegations contained in paragraph 38.

39.     On or about July 24, 2014, one of Endicia's customers notified Endicia that its account was switched from Endicia to Stamps.com without the customer's knowledge or consent.  At that time, Endicia became aware that Auctane had switched and/or solicited customers from Endicia to Stamps.com and had disclosed and/or misappropriated Endicia's confidential information and/or trade secrets to Stamps.com.

**ANSWER:** ShipStation denies the allegations contained in paragraph 39.

## V.
## CAUSES OF ACTION

### COUNT ONE
### BREACH OF CONTRACT (NON-SOLICITATION)

40.     Endicia hereby incorporates the preceding paragraphs by reference.

**ANSWER:** ShipStation restates and incorporates by reference the preceding answers to paragraphs 1-39.

41.     The 2013 Agreement is a valid and enforceable contract of which Endicia and Auctane are the proper parties.

**ANSWER:** ShipStation admits that the 2013 Endicia-ShipStation Agreement was fully executed on November 22, 2013. ShipStation considers the 2013 Endicia-ShipStation Agreement terminated as a result of Endicia's breach. Except as expressly admitted, ShipStation denies the remaining allegations of paragraph 41 of the Second Amended Complaint.

42.     The 2013 Agreement includes the following valid and enforceable non-solicitation provision:

> **7.7 Non-Solicitation of Customers.**  Endicia will not use any information obtained as a result of this Agreement to solicit Customers of Partner with respect to services or Products substantially similar to those provided to such Customer by Partner.  Partner will not use any information obtained as a result of this Agreement to solicit Customers of Endicia with respect to services or Products substantially similar to those provided to such Customer by Endicia.

**ANSWER:** ShipStation admits that the 2013 Endicia-ShipStation Agreement was fully executed on November 22, 2013. ShipStation considers the 2013 Endicia-ShipStation Agreement terminated as a result of Endicia's breach. Except as expressly admitted, ShipStation denies the remaining allegations of paragraph 42 of the Second Amended Complaint.

43.     The term "Customers of Endicia" in the 2013 Agreement means any person or entity which uses the ELS service, in the applications that ShipStation provided to its subscribers, in order to print their own shipping labels with appropriate postage.

**ANSWER:** ShipStation denies the allegations contained in paragraph 43.

44.     To the extent "Customers of Endicia" is vague or ambiguous, the plain and ordinary meaning of "customers" confirms that "Customers of Endicia" in the 2013 Agreement means persons or entities which use the ELS service, in the applications that ShipStation provided to its subscribers, to purchase USPS shipping labels with appropriate postage from Endicia.

**ANSWER:** ShipStation denies the allegations contained in paragraph 44.

45.     To the extent "Customers of Endicia" is vague or ambiguous, the course of dealing between Auctane and Endicia for nearly three years, from September, 2011 to July, 2014, including the parties' performance of the 2011 Agreement, confirms that "Customers of Endicia" in the 2013 Agreement are persons or entities which use the ELS service, in the applications that ShipStation provided to its subscribers, to purchase USPS shipping labels with appropriate postage.

**ANSWER:** ShipStation denies the allegations contained in paragraph 45.

46.     To the extent "Customers of Endicia" is vague or ambiguous, the negotiations between Auctane and Endicia of the 2013 Agreement confirm that "Customers of Endicia" in the Agreement means persons or entities which used the ELS service, in the applications that ShipStation provided to its subscribers, in purchase USPS shipping labels with appropriate postage.

**ANSWER:** ShipStation denies the allegations contained in paragraph 46.

47.     Article 7.3 of the 2013 Agreement states as follows:

> **Remedies.**  Each Party acknowledges that the other Party may suffer irreparable damage in the event of any breach of the provisions of this Article 7.  Accordingly, in such event, a Party will be entitled to temporary, preliminary and final injunctive relief as well as any other

applicable remedies at law or in equity against the party who has breached or threatened to breach this Article 7.

**ANSWER:** ShipStation admits the allegations contained in paragraph 47.

48.     Auctane breached the 2013 Agreement by using information obtained as a result of the 2013 Agreement in order to migrate, switch, and otherwise solicit customers from Endicia to Stamps.com with respect to services or products substantially similar to those offered by Endicia.  Information obtained from the parties' performance of the 2013 Agreement included, but was not limited to, the identification of existing Endicia ELS users, customer account records created as a result of the 2013 Agreement (including the type and volume of shipping labels being purchased by such customers) and identifying which customers Auctane determined not to switch by virtue of its interpretation of terms of the 2013 Agreement.

**ANSWER:** ShipStation denies the allegations contained in paragraph 48.

49.     Auctane's breach has caused and continues to cause Endicia irreparable injury and damages due to the solicitation of its customers by Auctane to Stamps.com.

**ANSWER:** ShipStation denies the allegations contained in paragraph 49.

50.     Endicia is entitled to punitive damages under Delaware law[1] because Auctane's use of information obtained as a result of the 2013 Agreement to solicit customers of Endicia with respect to services or products substantially similar to those offered by Endicia amounts to tortious conduct and was malicious, willful, and wanton for the purpose of injuring Endicia by depriving it of the benefits of the 2013 Agreement.

**ANSWER:** ShipStation denies the allegations contained in paragraph 50.

## COUNT TWO
## BREACH OF CONTRACT (MISAPPROPRIATION OF CONFIDENTIAL INFORMATION AND TRADE SECRETS)

51.     Endicia hereby incorporates the preceding paragraphs by reference.

**ANSWER:** ShipStation restates and incorporates by reference the preceding answers to paragraphs 1-50.

52.     The 2013 Agreement is a valid and enforceable contract of which Endicia and Auctane are the proper parties thereto.

---

[1]     Pursuant to Article 10.9, the 2013 Agreement is governed by the laws of the State of Delaware, excluding its conflict of laws rules.

**ANSWER:** ShipStation admits that the 2013 Endicia-ShipStation Agreement was fully executed on November 22, 2013. ShipStation considers the 2013 Endicia-ShipStation Agreement terminated as a result of Endicia's breach. Except as expressly admitted, ShipStation denies the remaining allegations of paragraph 52 of the Second Amended Complaint.

      53.    The 2013 Agreement includes the following valid and enforceable confidential and trade secret provision:

> **7.1 Duties Related to Confidential Information and Trade Secrets.** The Parties recognize that in the course of performing under this Agreement, both Parties have had and will continue to have access to certain Confidential Information and Trade Secrets belonging to the other Party and each desires that any such Confidential Information and Trade Secrets remain confidential. Each Party will use the same means it uses to protect its own Confidential Information and Trade Secrets, but in no event less than reasonable means, and will not directly or indirectly disclose or use the other Party's Confidential Information or Trade Secrets, except that:
>
>     a.    a Party may use the other Party's Confidential Information in connection with and performing the obligations of this Agreement, but may disclose it only internally on a need-to-know basis after informing the recipients that it is confidential and directing them to comply with this Agreement;
>
>     b.    after giving reasonable notice to the other Party, a Party may disclose the other Party's Confidential Information to the extent required by law;
>
>     c.    on request, a Party will return or destroy all records that contain or reflect the other Party's Confidential Information.

**ANSWER:** ShipStation admits that the 2013 Endicia-ShipStation Agreement was fully executed on November 22, 2013. ShipStation considers the 2013 Endicia-ShipStation Agreement terminated as a result of Endicia's breach. Except as expressly admitted, ShipStation denies the remaining allegations of paragraph 53 of the Second Amended Complaint.

      54.    As part of its performance of the 2013 Agreement, Endicia disclosed confidential information and/or trade secrets to Auctane with respect to customers who used Express

One to purchase Endicia postage labels via the Endicia ELS service.  The confidential information and/or trade secrets included the following:

> (a)    customer information including customer names, account profiles, email addresses, and physical addresses which can be used for sales, solicitation and customer account conversion;

> (b)    present and historical shipping volumes, shipping types, shipping activity trends and other marketing characteristics of individual customers; and

> (c)    destination address information that could be used for marketing purposes.

**ANSWER:** ShipStation denies the allegations contained in paragraph 54.

55.    Auctane misappropriated and improperly disclosed the foregoing confidential information and trade secrets to Endicia's direct competitor, Stamps.com, on or about July 22 and 23, 2014 when Jason Hodges caused Endicia's confidential information to be provided to Stamps.com as a result of the switch of customers who had been printing Endicia labels using the Endicia ELS to Stamps.com.

**ANSWER:** ShipStation denies the allegations contained in paragraph 55.

56.    Auctane's breach has caused and continues to cause Endicia irreparable harm and damages as a result of Auctane's misappropriation of Endicia's confidential customer information to Stamps.com.

**ANSWER:** ShipStation denies the allegations contained in paragraph 56.

57.    Endicia is entitled to punitive damages under Delaware law because Auctane's disclosure and intentional misappropriation of Endicia's confidential information and/or trade secrets amounts to tortious conduct and was malicious, willful, and wanton for the purpose of injuring Endicia by depriving it of the benefits of the 2013 Agreement.

**ANSWER:** ShipStation denies the allegations contained in paragraph 57.

**COUNT THREE**
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

58.    Endicia hereby incorporates the preceding paragraphs by reference.

**ANSWER:** ShipStation restates and incorporates by reference the preceding answers to paragraphs 1-57.

DEFENDANT'S ANSWER TO
SECOND AMENDED COMPLAINT

CASE NO. 1:14-CV-750

59.     The 2013 Agreement is a valid and enforceable contract of which Endicia and Auctane are the proper parties.

**ANSWER:** ShipStation admits that the 2013 Endicia-ShipStation Agreement was fully executed on November 22, 2013. ShipStation considers the 2013 Endicia-ShipStation Agreement terminated as a result of Endicia's breach. Except as expressly admitted, ShipStation denies the remaining allegations of paragraph 59 of the Second Amended Complaint.

60.     The 2013 Agreement imposes upon Endicia and Auctane an implied covenant of good faith and fair dealing.

**ANSWER:** ShipStation admits the allegations contained in paragraph 60.

61.     Under Federal Rule of Civil Procedure 8(d)(2), Endicia alleges the following specific implied contractual obligations:

    (a)     Auctane will not migrate, switch, redirect, divert, or otherwise solicit customers using the ELS service and their accounts from Endicia to competitors of Endicia;

    (b)     Auctane will refrain from self-dealing for its own economic benefit to the detriment of Endicia;

    (c)     Auctane will refrain from arbitrary or unreasonable conduct which has the effect of preventing Endicia from receiving the benefits of the bargain in the 2013 Agreement.

**ANSWER:** ShipStation denies the allegations contained in paragraph 61.

62.     Auctane breached the implied covenant of good faith and fair dealing in the foregoing ways.

**ANSWER:** ShipStation denies the allegations contained in paragraph 62.

63.     Auctane's breach has caused and continues to cause Endicia injuries and damages.

**ANSWER:** ShipStation denies the allegations contained in paragraph 63.

## COUNT FOUR
## TORTIOUS MISAPPROPRIATION OF TRADE SECRETS

64.     Endicia hereby incorporates the preceding paragraphs by reference.

**ANSWER:** ShipStation restates and incorporates by reference the preceding answers to paragraphs 1-63.

65.    Endicia owned the following trade secret information with respect to customers who used the Endicia ELS service to print Endicia labels and who received discounted postage rates through Express One:

(a)    customer information including customer names, account profiles, email addresses, and physical addresses which can be used for sales, solicitation and customer account conversion;

(b)    present and historical shipping volumes, shipping types, shipping activity trends and other marketing characteristics of individual customers; and

(c)    destination address information that could be used for marketing purposes.

**ANSWER:** ShipStation denies the allegations contained in paragraph 65.

66.    Endicia provided the foregoing confidential information and trade secrets to Auctane pursuant to Article 7.1 of the 2013 Agreement.

**ANSWER:** ShipStation lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 66.

67.    Auctane had a duty to maintain the confidentiality of Endicia's confidential and trade secret information.

**ANSWER:** ShipStation admits the allegations contained in paragraph 67.

68.    Auctane misappropriated and improperly disclosed the foregoing confidential information and trade secrets to Endicia's direct competitor, Stamps.com, on or about July 22 and 24, 2014 when Jason Hodges caused Endicia's confidential information to be provided to Stamps.com as a result of the switch of customers who had been printing Endicia labels using the Endicia ELS to Stamps.com.

**ANSWER:** ShipStation denies the allegations contained in paragraph 68.

69.    Auctane's misappropriation and disclosure of Endicia's confidential information and trade secrets have caused and continue to cause Endicia to incur damages.

**ANSWER:** ShipStation denies the allegations contained in paragraph 69.

## COUNT FIVE
## DECLARATORY JUDGMENT

70.    Endicia hereby incorporates the preceding paragraphs by reference.

**ANSWER:** ShipStation restates and incorporates by reference the preceding answers to

paragraphs 1-69.

71.     Upon information and belief, the MIPA between Auctane and Stamps.com contains provisions requiring Auctane to migrate customers who are currently using the Endicia ELS service to print USPS postage to Stamps.com.  As a result of these provisions, Auctane and Stamps.com created a separate version of the ShipStation software that effectively precludes ShipStation subscribers who are currently printing Endicia First Class Postage labels from continuing to do so, and instead would cause these customers to print the same type labels using the Stamps.com's SWS label service. Endicia believes that Auctane will continue to attempt to migrate customers of Endicia away from Endicia to Stamps.com in accordance with the terms of the MIPA.

**ANSWER:** ShipStation denies the allegations contained in paragraph 71.

72.     Endicia seeks a declaratory judgment from the Court that the valid and enforceable terms of the 2013 Agreement provide that:

(a)     Auctane is prohibited, either directly or through its affiliated or parent companies, from migrating, switching, diverting, and/or otherwise soliciting Endicia's customers to use Stamps.com's SWS label service to print USPS First Class Mail postage labels instead of purchasing such labels from Endicia.

(b)     Auctane is prohibited from disclosing to Stamps.com the following confidential and/or trade secret information belonging to Endicia with respect to customers who are printing USPS First Class Mail postage labels: customer names, account profiles, email addresses, and physical addresses which can be used for sales, solicitation and customer account conversion, present and historical shipping volumes, shipping types, shipping activity trends and other marketing characteristics of individual customers, destination address information that could be used for marketing purposes, the customer information, data, shipping history from November 12, 2013 through at least November 12, 2019.

**ANSWER:** ShipStation admits that Endicia seeks declaratory judgment.  Except as expressly

admitted herein, ShipStation denies the allegations contained in paragraph 72.

## COUNT SIX
## FRAUD

73.     Endicia hereby incorporates the preceding paragraphs by reference.

**ANSWER:** ShipStation restates and incorporates by reference the preceding answers to paragraphs 1-73.

74.     In response to a direct inquiry by Rick Hernandez of Endicia to Nathan Jones, the CEO of Auctane as to whether the acquisition of Auctane by Stamps.com would affect the customers printing Endicia labels through ShipStation, Mr. Jones made the following fraudulent statement in a June 25, 2014, email to Mr. Hernandez: "Nothing has changed on our end with regards to Endicia and existing accounts within ShipStation." Mr. Jones made several similar oral misrepresentations to Mr. Hernandez in or about June, 2014, immediately after the acquisition of Auctane by Stamps.com was announced.

**ANSWER:** ShipStation denies the allegations contained in paragraph 74.

75.     The foregoing misrepresentations and omissions made by Auctane to Endicia were material and false.

**ANSWER:** ShipStation denies the allegations contained in paragraph 75.

76.     Auctane knew the foregoing misrepresentations and omissions were material and false.

**ANSWER:** ShipStation denies the allegations contained in paragraph 76.

77.     Auctane made the foregoing misrepresentations and omissions with the intent that Endicia and others would act based on the misrepresentations and omissions.

**ANSWER:** ShipStation denies the allegations contained in paragraph 77.

78.     Endicia relied on Auctane's misrepresentations and omissions by refraining from taking action to protect its relationship with its customers who were printing Endicia labels, and to capture, preserve and protect from disclosure the customer data belonging to Endicia and which it had access to prior to the switch by Auctane of in excess of 3800 customers to Stamps.com.

**ANSWER:** ShipStation denies the allegations contained in paragraph 79

79.     These misrepresentations and omissions by Auctane have caused and continue to cause Endicia injuries and damages.

**ANSWER:** ShipStation denies the allegations contained in paragraph 79.

80.     Based on the intentional, willful and wanton conduct of Auctane, Endicia is entitled to exemplary damages because the foregoing injuries and damages to Endicia result from Auctane's fraudulent conduct alleged in this Count.

**ANSWER:** ShipStation denies the allegations contained in paragraph 80.

**COUNT SEVEN**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS**

81.    Endicia hereby incorporates the preceding paragraphs by reference.

**ANSWER:** ShipStation restates and incorporates by reference the preceding answers to

paragraphs 1-80.

82.    Auctane tortiously interfered with Endicia's prospective business relations by the following conduct:

(a)    migrating, switching, and/or otherwise soliciting prospective customers from Endicia to Stamps.com; and

(b)    misrepresenting and failing to disclose the migration, switch, and/or solicitation to Endicia, Express One, and prospective customers.

**ANSWER:** ShipStation denies the allegations contained in paragraph 82.

83.    There was a reasonable probability that Endicia would have entered into prospective additional business relationships with its customers, who were using the ELS service to print shipping labels with appropriate postage, but for Auctane's tortious interference with Endicia's ongoing and future relationships with its customers.

**ANSWER:** ShipStation denies the allegations contained in paragraph 83.

84.    Auctane acted willfully, or with a conscious disregard, with respect to Endicia's relationships with its customers and/or knew the interference with these relationships was certain or substantially certain to occur as a result of the foregoing conduct.

**ANSWER:** ShipStation denies the allegations contained in paragraph 84.

85.    The foregoing conduct by Auctane was independently tortious as alleged in Counts Four and Six.

**ANSWER:** ShipStation denies the allegations contained in paragraph 85.

86.    Auctane's actions as alleged in this Count have proximately caused and continues to cause Endicia injuries and damages.

**ANSWER:** ShipStation denies the allegations contained in paragraph 86.

87.     Endicia is entitled to exemplary damages because the foregoing injuries and damages to Endicia result from the fraudulent and willful conduct engaged in by Auctane and intending to harm Endicia.

**ANSWER:** ShipStation denies the allegations contained in paragraph 87.

## COUNT EIGHT
## CIVIL CONSPIRACY

88.     Endicia hereby incorporates the preceding paragraphs by reference.

**ANSWER:** ShipStation restates and incorporates by reference the preceding answers to

paragraphs 1-87.

89.     Auctane and Stamps.com engaged in a conspiracy to accomplish an unlawful purpose or to accomplish a purpose by unlawful means as set forth in this complaint.

**ANSWER:** ShipStation denies the allegations contained in paragraph 89.

90.     Auctane and Stamps.com agreed, or had a meeting of the minds, on a common unlawful purpose or course of action, including:

      (a)     migrating, switching, and/or otherwise soliciting customers from Endicia to Stamps.com in order to interfere with and deprive Endicia from further and prospective economic and business advantages with respect to such customers;

      (b)     misappropriating confidential and trade secret information belonging to Endicia and providing such information to Stamps.com; and

      (c)     fraudulently misrepresenting to Endicia that nothing had changed with respect to Endicia's business with ShipStation, thus inducing Endicia from taking action to protect its customer relationships and confidential information.

**ANSWER:** ShipStation denies the allegations contained in paragraph 90.

91.     Auctane committed one or more of the foregoing acts in furtherance of the common unlawful purpose or course of action.

**ANSWER:** ShipStation denies the allegations contained in paragraph 91.

92.     The foregoing conduct by Auctane was independently tortious as alleged in Counts Four and Six.

**ANSWER:** ShipStation denies the allegations contained in paragraph 92.

93.     Auctane's actions as alleged in this Count have proximately caused and continues to cause Endicia injuries and damages.

**ANSWER:** ShipStation denies the allegations contained in paragraph 93.

94.     Endicia is entitled to exemplary damages because the foregoing injuries and damages to Endicia result from the fraudulent and willful conduct engaged in by Auctane and intending to harm Endicia.

**ANSWER:** ShipStation denies the allegations contained in paragraph 94.

## VI.
## CONDITIONS PRECEDENT

95.     All conditions precedent for the claims above have been performed or have occurred.

**ANSWER:** ShipStation denies the allegations contained in paragraph 95.

## VII.
## REQUEST FOR PERMANENT INJUNCTION

96.     Endicia hereby incorporates the preceding paragraphs by reference.

**ANSWER:** ShipStation restates and incorporates by reference the preceding answers to paragraphs 1-95.

97.     Pursuant to Local Rule of Court 65-1, Endicia will file separate an application for a permanent injunction enjoining Auctane from breaching the above-referenced common law and contractual duties and requesting this Court to enter an order that:

(a)     Auctane must reverse the migration, switch, diversion, and/or other solicitation of Endicia's customers from Stamps.com back to Endicia in order to print USPS Priority, and/or USPS Express Mail through Express One.

(b)     Auctane must cease migrating, switching, diverting, and/or otherwise soliciting customers of Endicia to use services similar to those offered by Endicia.  Specifically, Auctane must not migrate, switch, divert, and/or otherwise solicit Endicia's customers to Stamps.com or any other postage printing technology.  To the extent that Auctane has already done so, Auctane must redirect those customers back to Endicia.

(c)     Auctane must cease using Auctane's software to impair, restrict, or disable the capabilities or performance of the ELS service.

(d)     Auctane must cease using (except in performing its obligations under the 2013 Agreement) or disclosing to third parties Endicia's confidential information and/or trade secrets.

(e)     Auctane must take any and all measures necessary to allow Endicia
complete visibility and access to its customers who are or were using the
Endicia ELS system to print USPS postage labels.

**ANSWER:** ShipStation denies the allegations contained in paragraph 97.  ShipStation denies

that Endicia is entitled to a permanent injunction.

### VIII.
### ANSWER TO PRAYER

ShipStation denies any and all allegations contained in the remainder of the Second

Amended Complaint and denies that Endicia is entitled to any of the relief requested in

paragraphs (1) through (6) of its prayer for relief or to any other relief in any form whatsoever.

ShipStation further denies each and every allegation contained in the Second Amended

Complaint to which it has not specifically responded.

### AFFIRMATIVE DEFENSES

Without waiving the foregoing answer, ShipStation asserts the following separate

affirmative defenses.

### First Affirmative Defense
(Unclean Hands)

Endicia's Second Amended Complaint, and each cause of action asserted therein, is

barred in whole or in part by the doctrine of unclean hands.  Specifically, and at a minimum,

Endicia violated the 2013 Endicia-ShipStation Agreement by using information obtained as a

result of 2013 Endicia-ShipStation Agreement to solicit customers of ShipStation with respect to

services or products substantially similar to those provided to such customers of ShipStation by

ShipStation.  Endicia has also violated the 2013 Endicia-ShipStation Agreement by disclosing

ShipStation's Confidential Information, including confidential emails and the terms of the

Agreement, through its public filings, including the Original Complaint and its filings requesting

a TRO and Preliminary Injunction.

### Second Affirmative Defense
(Prior Breach by Endicia)

Endicia's Second Amended Complaint, and each cause of action asserted therein, is barred in whole or in part because of Endicia's prior breach of the 2013 Endicia-ShipStation Agreement.  Specifically, and at a minimum, Endicia violated the 2013 Endicia-ShipStation Agreement by using information obtained as a result of the 2013 Endicia-ShipStation Agreement to solicit customers of ShipStation with respect to services or products substantially similar to those provided to such customers of ShipStation by ShipStation.  Endicia has also violated the 2013 Endicia-ShipStation Agreement by disclosing ShipStation's Confidential Information, including confidential emails and the terms of the Agreement, through its public filings, including the Original Complaint and its filings requesting a TRO and Preliminary Injunction. Endicia's contract claims should be barred because before a plaintiff can recover in contract, it must demonstrate substantial compliance with all of the provisions of that contract. Endicia has not substantially complied and/or performed on its contractual obligations.

### Third Affirmative Defense
(Good Faith)

Endicia's Second Amended Complaint, and each cause of action asserted therein, is barred in whole or in part because ShipStation's actions were justified and lawful based upon reasonable grounds, belief, and good faith conduct.

### Fourth Affirmative Defense
(Failure to Mitigate)

Endicia's Second Amended Complaint, and each cause of action asserted therein, is barred by Endicia's failure to take reasonable efforts to mitigate damages or injury, if any, that would have prevented (or at a minimum, substantially reduced) Endicia's alleged injury or damage.  Any recovery by Endicia must be reduced or barred for this reason.

**Fifth Affirmative Defense**
(Ready Ascertainability)

Endicia is barred from claiming trade secrets in any items of information that were readily ascertainable within the meaning of that affirmative defense under applicable trade secret law.

**Sixth Affirmative Defense**
(Limitation of Liability)

Endicia is barred from receiving any relief on the Second Amended Complaint, and on any cause of action alleged therein, to the extent that any of its claims for damages, if any, are barred by limitation of liability terms in the 2013 Endicia-ShipStation Agreement.

**Seventh Affirmative Defense**
(Failure to Satisfy a Condition Precedent)

Endicia is barred from receiving any relief on the Second Amended Complaint, and on any cause of action alleged therein, to the extent that any of its allegations require a condition precedent.

**Eighth Affirmative Defense**
(Failure to Plead Fraud with Particularity)

Endicia is barred from claiming fraud or receiving any relief on the Second Amended Complaint due to Endicia's failure to specifically allege the representations that supposedly constituted the alleged fraud and/or the entities that made the allegedly fraudulent representations or promises.

### Ninth Affirmative Defense
#### (Improper Notice of Breach)

Endicia is barred from receiving any relief on the Second Amended Complaint, and on any cause of action alleged therein, due to Endicia's failure to provide ShipStation with notice of any breach of the 2013 Endicia-ShipStation Agreement.

### Tenth Affirmative Defense
#### (No Damage to Endicia)

Endicia is barred from receiving any relief on the Second Amended Complaint, and on any cause of action alleged therein, because Endicia did not suffer any economic loss.

### Eleventh Affirmative Defense
#### (Failure to State a Claim)

To the extent that Endicia's Second Amended Complaint fails to state a claim upon which relief can be granted, it should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### Twelfth Affirmative Defense
#### (No Breach By ShipStation)

Endicia is barred from receiving any relief on the Second Amended Complaint, and on any cause of action alleged therein, because ShipStation did not breach the 2013 Endicia-ShipStation Agreement.

### Thirteenth Affirmative Defense
#### (Failure to Allege Special Damages)

Endicia is barred from claiming civil conspiracy or receiving any relief on the Second Amended Complaint due to Endicia's failure to specifically allege special damages that are separate and distinct from damages alleged for other causes of action and, as a result, this cause of action must fail.

## Fourteenth Affirmative Defense
### (No Business Relationship)

Endicia is barred from claiming tortious interference with prospective business relations or receiving any relief on the Second Amended Complaint because Endicia did not have a business relationship with "prospective customers."

## Fifteenth Affirmative Defense
### (No Reasonable Economic Gain)

Endicia is barred from claiming tortious interference with prospective business relations or receiving any relief on the Second Amended Complaint because Endicia had no reasonable expectation of economic gain from any alleged business relationship between Endicia and "prospective customers."

## Sixteenth Affirmative Defense
### (No Interference)

Endicia is barred from claiming tortious interference with prospective business relations or receiving any relief on the Second Amended Complaint because ShipStation did not engage in any conduct that interfered with Endicia's alleged business relationship with "prospective customers."

## Seventeenth Affirmative Defense
### (No Intent to Cause Interference)

Endicia is barred from claiming tortious interference with prospective business relations or receiving any relief on the Second Amended Complaint because ShipStation did not have intent, malicious, willful, or otherwise, to interfere with Endicia's alleged business relationship with "prospective customers."

**Eighteenth Affirmative Defense**
(Privilege of Competition)

Endicia is barred from claiming tortious interference with prospective business relations or receiving any relief on the Second Amended Complaint because ShipStation holds the privilege of competition.  Any action by ShipStation was undertaken to further ShipStation's business and under a good faith claim to exercise its own legal rights.

**Nineteenth Affirmative Defense**
(Failure to Allege Specific Damages)

Endicia is barred from claiming tortious interference with prospective business relations or receiving any relief on the Second Amended Complaint because Endicia failed to allege specific damages that are separate and distinct from damages alleged for other causes of action and, as a result, this cause of action must fail.

**Twentieth Affirmative Defense**
(Lack of Causal Relationship)

Endicia is barred from receiving any relief on the Second Amended Complaint, and on any cause of action alleged therein, because Endicia has failed to establish a causal relationship between ShipStation's alleged actions and Endicia's alleged damages.

**Additional Affirmative Defenses**
(Reservation of Right to Assert Additional Defenses)

ShipStation may have additional, as yet unidentified, defenses available.  ShipStation reserves the right to assert additional defenses that are revealed by its investigation of this action or through discovery.

## COUNTERCLAIM

In addition to the facts alleged herein, ShipStation incorporates by reference the responses to the Second Amended Complaint listed above.

### The Parties

1.      ShipStation is a Texas limited liability company with its principal office located at 2815 Exposition Blvd., Austin, Texas 78703.

2.      On information and belief, Endicia is a California corporation with its principal office located at 385 Sherman Avenue, Palo Alto, California 94306.

### Jurisdiction

3.      Diversity jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because Endicia and ShipStation are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

4.      This Court has personal jurisdiction over ShipStation because ShipStation is a citizen of the State of Texas and conducts systematic and continuous business in the State of Texas.  This Court has personal jurisdiction over Endicia at least because Endicia has already availed itself of this Court in this case.

5.      Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this counterclaim occurred in the Western District of Texas.

### Background

6.      The ShipStation software was launched in September 2011.  The ShipStation software is a web-based software solution designed to help online retailers organize, fulfill and ship their orders quickly and easily.

7.      On information and belief, Endicia is in the businesses of:  (1) shipping and mail software automation, and (2) postage evidencing supporting the entire line of United States Postal Service ("USPS") products allowing USPS customers to produce the entire spectrum of USPS shipping labels complete with tracking, postage, and insurance.

8.      Endicia and ShipStation have done business with each other since at least July 2011.

9.      On or about August 1, 2011, Endicia and ShipStation entered into an agreement ("2011 Endicia-ShipStation Agreement") that allowed ShipStation to embed the ELS service in the applications it provides its customers in order to allow customers to print their own shipping labels with appropriate postage, and granted a license to the ELS service from Endicia to ShipStation.

10.     In or about April 2013, Endicia used ShipStation's trade secret shipping volume information to target potential customers for its shipping integration with eBay.   Endicia obtained this information as a result of the 2011 Endicia-ShipStation Agreement.   Endicia's use of ShipStation's trade secret shipping volume information was unauthorized.

11.     On or about November 22, 2013, Endicia and ShipStation executed an agreement ("2013 Endicia-ShipStation Agreement").   As defined in both the 2011 and 2013 Endicia-ShipStation Agreements, a "Customer" has the meaning set forth in Paragraph A of Recitals: Endicia has various agreements with the USPS pursuant to which Endicia is an approved postage provider.   One such agreement (the "USPS Agreement") allows Endicia to license other software providers to embed the Endicia Label Server service described in more detail in Exhibit A attached hereto ("ELS") in the application(s) they provide their customers ("Customers") in order to allow Customers "to print their own shipping labels with appropriate postage."

12.     The 2013 Endicia-ShipStation Agreement includes a definition of Confidential Information.   The definition of Confidential Information includes *inter alia* "all information or data (in written, electronic or other form, or oral information that is reduced to writing) ... pertaining to the terms and conditions of [the 2013 Endicia-Auctane] Agreement."

13.     The 2013 Endicia-ShipStation Agreement includes the following termination provision:

**5.2 Termination**. Either Party may terminate this Agreement without cause by providing sixty (60) days written notice to other Party prior to and effective as of the applicable renewal date. Either party may terminate this Agreement if the other party materially breaches any provision of this Agreement and does not cure such breach within thirty (30) days of receiving written Notice from the terminating party.

14.     The 2013 Endicia-ShipStation Agreement includes a "Duties Related to Confidential Information and Trade Secrets" provision ("Section 7.1"). The "Duties Related to Confidential Information and Trade Secrets" provision requires, *inter alia*, that "[e]ach Party... will not directly or indirectly disclose or use the other Party's Confidential Information or Trade Secrets."

15.     The 2013 Endicia-ShipStation Agreement includes the following remedies provision:

**7.3 Remedies.** Each Party acknowledges that the other Party may suffer irreparable damage in the event of any breach of the provisions of this Article 7. Accordingly, in such event, a Party will be entitled to temporary, preliminary and final injunctive relief, as well as any other applicable remedies at law or in equity against the Party who has breached or threatened to breach this Article 7.

16.     The 2013 Endicia-ShipStation Agreement includes the following non-solicitation provision:

**7.7 Non-Solicitation of Customers.** Endicia will not use any information obtained as a result of this Agreement to solicit Customers of Partner with respect to services or Products substantially similar to those provided to such Customer by Partner. Partner will not use any information obtained as a result of this Agreement to solicit Customers of Endicia with respect to services or Products substantially similar to those provided to such Customer by Endicia.

17. The 2013 Endicia-ShipStation Agreement includes the following choice-of-law provision:

**10.9 Governing Law and Forum.** This Agreement shall be governed by the laws of the State of Delaware, excluding its conflict of laws rules.

18. On information and belief, Advanced Distribution Solutions, Inc. ("ADSI") is a developer and/or provider of multi-carrier shipping software.

19. On information and belief, ShipWorks is a developer and/or provider of multi-carrier shipping software.

20. On information and belief, Solid Commerce is a developer and/or provider of multi-carrier shipping software.

21. On information and belief, ShippingEasy is a developer and/or provider of multi-carrier shipping software.

22. ADSI, ShipWorks, Solid Commerce, and ShippingEasy offer services or products substantially similar to those provided by ShipStation to its customers and are competitors of ShipStation's.

23. Endicia has its own shipping software integration with at least Amazon and eBay.

24. ShipStation begins its relationship with most of its customers in the following way: a potential customer sees a ShipStation advertisement on an online marketplace (*e.g.,* eBay, Amazon, Etsy) or on a search engine website (*e.g.*, Google), the potential customer clicks on a link in the advertisement causing the potential customer's browser to navigate to ShipStation's website, and the potential customer elects to sign up for a ShipStation account. As part of the ShipStation account sign-up process, the customer provides his or her name, company name (if any), and contact information including an email address.

25. Once a ShipStation customer has signed up for a ShipStation account, he or she can sign-up for accounts with a PC Postage Provider or other providers (*e.g.*, FedEx, UPS). The

ShipStation website accepts user input and relays the input to the provider's server via an application programming interface ("API").   Prior to June 2014, a new ShipStation customer could sign up for an Endicia account via an API on the ShipStation website.   When a new ShipStation customer elected to open an Endicia account, the ShipStation website would relay the information provided by the customer to an Endicia server.   Such information included the new ShipStation customer's name and email address.   In this way, many new ShipStation customers signed up for accounts with Endicia.

26.     Such new ShipStation customers with Endicia accounts were able to purchase and did purchase postage using Endicia's ELS service, and were therefore covered by the 2013 Endicia-ShipStation Agreement.

27.     In July 2014, Endicia sent an email newsletter ("July 2014 newsletter") to customers on its customer list, some of which it knew to be customers of ShipStation.   This email newsletter featured advertisements for "Featured Partners" ADSI, ShipWorks, and Solid Commerce who offer services or products that are substantially similar to those offered by ShipStation.   The July 2014 newsletter also featured advertisements of Endicia's own shipping software integration with Amazon.

28.     Endicia distributed the July 2014 newsletter via email to customers whose email addresses were on Endicia's email newsletter distribution list.   Endicia distributed the July 2014 newsletter to "Customers of Partner" as set forth in Section 7.7 of the 2013 Endicia-ShipStation Agreement.

29.     Many of the email addresses on Endicia's email newsletter distribution list, including "Customers of Partner" as set forth in Section 7.7 of the 2013 Endicia-ShipStation Agreement, were provided to Endicia via the ShipStation subscriber sign-up process discussed above.

30.     Endicia knew that some of the customers who received the July 2014 newsletter are "Customers of Partner" as set forth in Section 7.7 of the 2013 Endicia-ShipStation Agreement.

31.     On January 5, 2014, Endicia posted a tweet to its Twitter account featuring ShippingEasy as its "partner of the month."  The tweet contained a link to ShippingEasy's Twitter account as well as a link to a profile of ShippingEasy on Endicia's website. ShippingEasy offers services or products that are substantially similar to those offered by ShipStation.

32.     Endicia knew that some of the customers who received this tweet are customers of ShipStation under the 2013 Endicia-ShipStation Agreement.

33.     On information and belief, Endicia has repeatedly sent out other similar newsletters and/or tweets to solicit customers of ShipStation with respect to services or products substantially similar to those provided to such customers by ShipStation, including but not limited to promotions and solicitations regarding (a) Endicia's own software and shipping solutions integrated into marketplaces such as BigCommerce, eBay and others, and (b) shipping software and solutions offered by competitors of ShipStation.

34.     Endicia has used information obtained as a result of the 2013 Endicia-ShipStation Agreement to solicit customers of ShipStation with respect to services or products substantially similar to those provided to such customers by ShipStation.

35.     On August 11, 2014, Endicia filed the original Complaint in this case with this Court.  On August 12, 2014, Endicia filed an Application for Temporary Restraining Order and Preliminary Injunction (the "TRO") in this case with this Court.  Endicia attached an unredacted copy of the 2013 Endicia-ShipStation Agreement as an exhibit to both the Complaint and the TRO.

36.     Neither the original Complaint nor the TRO were filed under seal.

37.     The original Complaint and the TRO were and continue to be publicly available.

38.     Endicia has directly and/or indirectly disclosed the terms and conditions of the 2013 Endicia-ShipStation Agreement.

39.     Endicia has directly and/or indirectly disclosed Confidential Information of ShipStation including, but not limited to, the cost structure between the parties, the amount of the

referral fees, revenue-sharing amounts for DHL GlobalMail transactions, rebates and revenue share amounts on USPS qualified products, the term of the Agreement, and indemnification obligations.

40.     Endicia directly and/or indirectly disclosed in unredacted form information about the Express One portal.   This information is Confidential Information of ShipStation and includes information about ShipStation customers and transaction volume of ShipStation.

41.     Endicia did not receive ShipStation's consent to disclose the 2013 Endicia-ShipStation Agreement.

42.     Endicia did not receive ShipStation's consent to disclose any Confidential Information of ShipStation.

43.     ShipStation notified Endicia of its breach of Section 7.1 of the 2013 Endicia-ShipStation Agreement via a letter signed by Nathan Jones dated August 19, 2014.

44.     Endicia responded to the letter dated August 19, 2014 in a letter signed by Amine Khechfe dated August 25, 2014.   In this letter, Endicia asserted that its disclosure of the terms of the 2013 Endicia-ShipStation Agreement and other Confidential Information of ShipStation in a publicly available filing to this Court did not constitute a breach of the confidentiality provisions of the 2013 Endicia-ShipStation Agreement.   Endicia also asserted that its *post hoc* filing of a motion to seal the 2013 Endicia-ShipStation Agreement and other Confidential Information of ShipStation cured any breach.

45.     On September 4, 2014, counsel for ShipStation deposed Rick Hernandez as part of discovery in this case.   Rick Hernandez is Endicia's Senior Manager of Business Development.

46.     Rick Hernandez admitted that Endicia distributed the July 2014 newsletter and similar newsletters to customers of ShipStation.   The July 2014 newsletter and similar newsletters feature advertisements for competitors of ShipStation who offer services or products that are substantially similar to those offered by ShipStation.

47.     Counsel for ShipStation notified Endicia of its breach of Section 7.7 of the 2013 Endicia-ShipStation Agreement via a letter signed by M. Craig Tyler dated September 15, 2014.

## CAUSES OF ACTION

### A.  COUNT ONE: BREACH OF CONTRACT – NON-SOLICITATION

48.     ShipStation hereby incorporates the preceding paragraphs by reference.

49.     The 2013 Endicia-ShipStation Agreement was fully executed on November 22, 2013.

50.     Pursuant to the 2013 Endicia-ShipStation Agreement, Endicia agreed that it would not use any information obtained as a result of the 2013 Endicia-ShipStation Agreement to solicit customers of ShipStation with respect to services or products substantially similar to those offered by ShipStation.

51.     Endicia breached the 2013 Endicia-ShipStation Agreement by soliciting Customers of ShipStation by using email addresses obtained as a result of the 2013 Endicia-ShipStation Agreement to solicit customers of ShipStation with respect to services or products substantially similar to those provided to such customers by ShipStation via its newsletters.

52.     Endicia expressly agreed in the 2013 Endicia-ShipStation Agreement that any such solicitation of ShipStation's customers may cause irreparable harm entitling ShipStation to injunctive relief.

53.     Endicia's breach has caused and continues to cause ShipStation injury.

54.     ShipStation is entitled to punitive damages under Delaware law because Endicia's use of information as a result of the 2013 Endicia-ShipStation Agreement to solicit customers of ShipStation with respect to services or products substantially similar to those offered by ShipStation amounts to tortious conduct and was malicious, willful, and wanton for the purpose of injuring ShipStation by depriving it of the benefits of the 2013 Endicia-ShipStation Agreement.

### B.  COUNT TWO: BREACH OF CONTRACT – CONFIDENTIALITY

55.     ShipStation hereby incorporates the preceding paragraphs by reference.

56.     The 2013 Endicia-ShipStation Agreement was fully executed on November 22, 2013.

57.     Pursuant to the 2013 Endicia-ShipStation Agreement, Endicia agreed that it would not directly or indirectly disclose or use ShipStation's Confidential Information or Trade Secrets except in connection with and performing the obligations of the 2013 Endicia-ShipStation Agreement or after giving reasonable notice to the ShipStation, to the extent required by law.

58.     Endicia breached the 2013 Endicia-ShipStation Agreement by directly and/or indirectly disclosing to the public an unredacted copy of the 2013 Endicia-ShipStation Agreement in the original Complaint and TRO in this case.  *See* Dkt. No. 1, Ex. 1 and Dkt. No. 5, Exs. P-1 and P-5.

59.     Endicia also breached the 2013 Endicia-ShipStation Agreement by directly and/or indirectly disclosing to the public Confidential Information of ShipStation in the original Complaint and TRO in this case.  *See* Dkt. No. 1, Ex. 1 and Dkt. No. 5, Exs. P-2 and P-5.

60.     Endicia expressly agreed in the 2013 Endicia-ShipStation Agreement that any such disclosure of Confidential Information and Trade Secrets of ShipStation may cause irreparable harm entitling ShipStation to injunctive relief.

61.     Endicia's breach has caused and continues to cause ShipStation injury.

62.     ShipStation is entitled to punitive damages under Delaware law because Endicia's direct and indirect disclosure to the public Confidential Information and Trade Secrets of ShipStation amounts to tortious conduct and was malicious, willful, and wanton for the purpose of injuring ShipStation by depriving it of the benefits of the 2013 Endicia-ShipStation Agreement.

### C. COUNT THREE: DECLARATORY JUDGMENT – TERMINATION OF 2013 ENDICIA-SHIPSTATION AGREEMENT – CONFIDENTIALITY

63.     ShipStation hereby incorporates the preceding paragraphs by reference.

64.     The 2013 Endicia-ShipStation Agreement was fully executed on November 22, 2013.

65.     Either party of the 2013 Endicia-ShipStation Agreement may terminate the 2013 Endicia-ShipStation Agreement if the other party materially breaches any provision of the 2013 Endicia-ShipStation Agreement and does not cure such breach within thirty days of receiving written notice from the terminating party.

66.     ShipStation provided written notice to Endicia of Endicia's breach of Section 7.1 of the 2013 Endicia-ShipStation Agreement on August 19, 2014.

67.     Endicia had not cured its breach by September 19, 2014.

68.     Pursuant to 10 Del. C. §6501 or in the alternative Texas Civil Practice and Remedies Code 37 and/or 28 USC §2202, ShipStation seeks a declaration from the Court that per the express terms of the Agreement, the 2013 Endicia-ShipStation Agreement is terminated.

### D. COUNT FOUR: DECLARATORY JUDGMENT – TERMINATION OF 2013 ENDICIA-SHIPSTATION AGREEMENT – NON-SOLICITATION

69.     ShipStation hereby incorporates the preceding paragraphs by reference.

70.     The 2013 Endicia-ShipStation Agreement was fully executed on November 22, 2013.

71.     Either party of the 2013 Endicia-ShipStation Agreement may terminate the 2013 Endicia-ShipStation Agreement if the other party materially breaches any provision of the 2013 Endicia-ShipStation Agreement and does not cure such breach within thirty days of receiving written notice from the terminating party.

72.     Counsel for ShipStation provided written notice to Endicia of Endicia's breach of Section 7.7 of the 2013 Endicia-ShipStation Agreement on September 15, 2014.

73.     Endicia had not cured its breach by October 15, 2014.

74.     Pursuant to 10 Del. C. §6501 or in the alternative Texas Civil Practice and Remedies Code 37 and/or 28 USC §2202, ShipStation seeks a declaration from the Court that per the express terms of the Agreement, the 2013 Endicia-ShipStation Agreement is terminated.

### E.  COUNT FIVE: MISAPPROPRIATION OF TRADE SECRETS

75.     ShipStation hereby incorporates the preceding paragraphs by reference.

76.     ShipStation's shipping volume information is a trade secret as defined by the Delaware Uniform Trade Secrets Act because such shipping information is information that (a) derives independent economic value from not generally being known to or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

77.     Endicia misappropriated ShipStation's trade secrets by (a) acquiring ShipStation's trade secret shipping volume information under the 2011 Endicia-ShipStation Agreement when Endicia knew or had reason to know such shipping volume information was a ShipStation trade secret and (b) using the shipping volume information to target potential customers for Endicia's eBay shipping integration in violation of 6 Del. C. §2001 (2014).

78.     Endicia's misappropriation of ShipStation's trade secrets has caused and continues to cause ShipStation injury.

### F.  COUNT SIX: DECLARATORY JUDGMENT

79.     ShipStation hereby incorporates the preceding paragraphs by reference.

80.     Pursuant to 10 Del. C. §6501 or in the alternative Texas Civil Practice and Remedies Code 37 and/or 28 USC §2202, ShipStation seeks a declaration from the Court that per the express terms of the Agreement:

    a.   Causing Express One accounts to be switched on the back end from printing Endicia labels to printing Stamps.com labels does not violate Section 7.7 of the 2013 Endicia-ShipStation Agreement;

   b.   ShipStation may switch Express One accounts on the back end or solicit customers so long as it does not use any information obtained as a result of the 2013 Endicia-ShipStation Agreement;

   c.   Causing Express One accounts to be switched on the back end from printing Endicia labels to printing Stamps.com labels for customers who signed up for a ShipStation account 1) without using a tracked link containing an identifier unique to Endicia, or 2) with a tracked link unassociated with Endicia, or 3) with a customer's own previously-used URL does not violate any provision of the 2013 Endicia-ShipStation Agreement;

   d.   When the 2013 Endicia-ShipStation Agreement  is terminated, Section 7.7 of the 2013 Endicia-ShipStation Agreement is terminated immediately;

   e.   Customers who signed up for ShipStation before the execution of the 2013 Endicia-ShipStation Agreement are not covered by the 2013 Endicia-ShipStation Agreement.

## A.  COUNT SEVEN: DECLARATORY JUDGMENT - 2013 ENDICIA-SHIPSTATION AGREEMENT – INDEFINITE AND UNENFORCEABLE

81.    ShipStation hereby incorporates the preceding paragraphs by reference.

82.    Section 1.3 of the 2013 Endicia-ShipStation Agreement defines "Customer." "Customer – has the meaning set forth in Paragraph A of Recitals."

83.    Paragraph A of the Recitals of the 2013 Endicia-ShipStation Agreement states in relevant part, "One such agreement (the "USPS Agreement") allows Endicia to license other software providers to embed the Endicia Label Server service described in more detail in Exhibit

A attached hereto ("ELS") in the application(s) they provide their customers ("Customers") in order to allow Customers to print their own shipping labels with appropriate postage."

84.     "Customers of Endicia" only appears in Section 7.7 of the 2013 Endicia-ShipStation Agreement.  Section 7.7 does not define "Customers of Endicia."  However, the term "Customers of Endicia" is central to the scope of Section 7.7 and is material to determining whether a breach has occurred.

85.     The parties' course of dealing did not provide a definition of the material term "Customers of Endicia."

86.     "Customers of Endicia" is susceptible to different, reasonable interpretations. Accordingly, Section 7.7 of the 2013 Endicia-ShipStation Agreement fails to provide a reasonable standard for determining whether a breach has occurred.

87.     Pursuant to 10 Del. C. § 6501 or in the alternative Texas Civil Practice and Remedies Code 37 and/or 28 USC § 2202, ShipStation seeks a judicial determination that the 2013 Endicia-ShipStation Agreement is indefinite and therefore unenforceable because it is vague and ambiguous, or otherwise contradictory with respect to the term "Customers of Endicia."

88.     In the alternative, should the Court find 2013 Endicia-ShipStation Agreement not to be fatally indefinite, ShipStation seeks a declaration from the Court that a "Customer of Endicia" be defined as "a customer who signed up for a ShipStation account through a tracked link containing an identifier unique to Endicia."

## PRAYER FOR RELIEF

WHEREFORE, ShipStation prays that this Court:

a.   Find that Endicia has materially breached the 2013 Endicia-ShipStation Agreement;

b.   Award direct damages to ShipStation for Endicia's breach;

c.  Find that ShipStation has not breached the 2013 Endicia-ShipStation Agreement;

d.  Declare that the 2013 Endicia-ShipStation Agreement is terminated;

e.  Declare that the 2013 Endicia-ShipStation Agreement is indefinite and therefore unenforceable;

f.  Declare each count of ShipStation's declaratory judgment counterclaims be granted;

g.  Award damages to ShipStation for Endica's misappropriation of ShipStation's trade secrets;

h.  Award ShipStation any other relief, in law and in equity, to which the Court finds ShipStation is justly entitled.

Dated:  November 24, 2014                    WILSON SONSINI GOODRICH & ROSATI
                                            Professional Corporation


                                    By:  _/s/ M. Craig Tyler_____
                                            M. CRAIG TYLER
                                            TX State Bar No. 00794762
                                            ctyler@wsgr.com
                                            GEOFFREY W. HEAVEN
                                            TX State Bar No. 24090159
                                            gheaven@wsgr.com
                                            ANNA G. PHILLIPS
                                            TX State Bar No. 24090329
                                            anphillips@wsgr.com

                                            900 S. Capital of Texas Highway
                                            Las Cimas IV, 5th Floor
                                            Austin, Texas 78746
                                            Telephone: (512) 338-5400
                                            Facsimile: (512) 338-5499

                                            **Attorneys for Defendant**
                                            **AUCTANE L.L.C. D/B/A SHIPSTATION**

**CERTIFICATE OF SERVICE**

I hereby certify that on November 24, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all parties. I further certify that I have served via e-mail to the any non-CM/ECF participants.


<u>/s/ M. Craig Tyler</u>
M. Craig Tyler